IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090394-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (April 5, 2012) |
| Robert David Bair, | ) | |
| | ) | 2012 UT App 106 |
| Defendant and Appellant. | ) | |

-----

Second District, Farmington Department, 071702082
The Honorable Thomas L. Kay

Attorneys:     Kenneth R. Brown and Ann M. Taliaferro, Salt Lake City, for Appellant
Mark L. Shurtleff and Christopher D. Ballard, Salt Lake City, for Appellee

-----

Before Judges Orme, Davis, and Christiansen.

DAVIS, Judge:

¶1     Robert David Bair appeals from a conviction and judgment of two counts of aggravated sexual abuse of a child. We reverse Bair's convictions for aggravated sexual abuse of a child and direct entry of a conviction and judgment of two counts of sexual abuse of a child.

BACKGROUND[1]

¶2      In August 1996, Bair separated from his wife (Mother).  In a handwritten letter that he left on Mother's car (the separation letter), Bair explained that he had engaged in extramarital sex; that he was "addicted to sex"; specifically the "touchy/feely-play around part of sex"; and that he had a "clearly addictive pattern," amounting to an "emotional disorder" that he "need[ed] help for."  The couple eventually divorced and Mother retained custody of their three children, an eight-year-old son (Son), a seven-year-old daughter (Daughter), and a four-year-old daughter (Sister).  From February 1997 until December 1998, Bair lived in an apartment on his own in Layton, Utah, where his children would visit him every other weekend.  During these visits, Bair would often tickle and play with his children in his bedroom.  However, on three to five occasions during the time in which Bair lived in Layton, the horseplay progressed to abuse.  On each occasion, Son and Sister would leave the room to engage in other activities and Bair would tell Daughter to stay so he could "'love [her] up.'"  He used that phrase each time and did not use it in any other context with Daughter.  "Loving her up" consisted of thirty- to forty-five-minute sessions during which Bair would kiss Daughter on the lips, insert his tongue into her mouth, and put his hand under her clothing to rub her nipples, vaginal area, clitoris, and buttocks.  On one occasion, Bair inserted his finger into Daughter's vagina.  During these sessions, Bair would "tell [Daughter] that [she] was pretty and that [Sister] would always be jealous of [her] because [she] would always be prettier than her," and he "would tell [Daughter] that [she] was his best friend and ask[ her] if [she] liked it."  On the last episode of abuse, Bair "slowed down" what he was doing, "stopped[,] . . . sat up on the bed," told Daughter "to not tell anybody because it was [their] little secret" and "it was wrong," and then left the room.

¶3      At one point after Daughter was abused and before she reported the abuse, Mother had a disturbing dream that prompted her to ask Daughter if Bair "had ever touched [her] inappropriately."  Daughter responded in the negative, explaining at trial that she "should have told [Mother] then" but did not because she did not want to hurt

_____

1.  "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly.  We present conflicting evidence only as necessary to understand issues raised on appeal."  *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal quotation marks omitted).

Bair. Daughter did not disclose the abuse to anyone until she was in sixth grade, when she told Sister. Sister "got really upset" and asked Daughter not to tell Mother. Daughter refrained from telling Mother until July 2007, when Daughter felt like she "couldn't deal with it anymore" and "needed help." Talking with people in an online abuse forum where individuals shared their personal experiences with abuse encouraged Daughter to report the abuse. Daughter also reported the abuse out of concern for Sister and a stepsister who was living with Bair at the time of reporting.

¶4      Daughter and Sister were each interviewed at the Children's Justice Center (CJC). One of the investigators who interviewed them (the Detective) also interviewed Bair. Subsequently, an Information was filed charging Bair with two counts of aggravated sexual abuse of a child. Bair's trial counsel conditionally waived the preliminary hearing, and Bair was bound over on the charges as they were set forth in the Information.[2]

¶5      A jury trial followed. Daughter testified at trial and mentioned that she had gone through counseling in the time between her initial reporting and the trial and that the counseling allowed her to "get some more memories back." Daughter testified that during the therapy sessions she would "lay down on [a] couch and [the therapist] would just turn the lights down and . . . would just talk to [her] about the memories that [she] already had," prompting her to think "back as hard as [she] could." Mother's testimony also indicated that Daughter had attempted hypnosis to "see if there were any other issues that hadn't already been discussed" but that it was unsuccessful.

¶6      Over Bair's objections on relevance and prejudice grounds, the State also introduced portions of the separation letter. The State used the letter as evidence of Bair's intent and to rebut Bair's defense that Daughter had fabricated the allegations. The State argued that the statements in the letter regarding Bair's addiction to the "touchy/feely" aspects of sex are consistent with Daughter's testimony describing the abuse as involving acts that comprised the "touchy/feely" aspects of sex. The State also asserted that because Daughter had no knowledge of Bair's letter before reporting her abuse, Bair's defense that Daughter fabricated her allegations is not believable in light of the otherwise inexplicable consistencies between the letter and Daughter's

---

2. The Information was later amended to narrow the time frame of the alleged abuse to coincide with the time frame that Bair lived in the Layton apartment.

allegations. Additionally, the State used the letter to demonstrate that Bair's intent in abusing Daughter was to satisfy his addiction to the "touchy/feely" aspects of sex that he admittedly was having difficulty controlling not long before Daughter was abused.

¶7    The Detective also testified at trial.  He testified that during his interview with Bair, Bair described Daughter as taking on a mature, motherly role after the divorce and stated that he felt like he was "able to talk to her."  The Detective testified that Bair also "talked about cuddling with her[, l]oving her up."  He testified that he confronted Bair with the phrase "loving up," explaining that Daughter used the same term to describe the abuse.  According to the Detective's testimony, Bair explained that he used the phrase to mean "hugging and kissing, teasing, [and] running around."  The Detective also testified that when he asked Bair if he had sexually abused Daughter, Bair stated that he "'didn't have an interest in children'" and did not "'have much of an interest with [Daughter] that way,'" and that he "hesitate[d]" before stating, "'I mean, no interest in children.'"  The Detective testified that Bair's response to his follow-up question for clarification was, "'I have no interest in children.'"  The Detective further testified that Bair tried to deflect the interview questions and that Bair's denials were "flat" and "emotionless."  Flat and emotionless responses, the Detective testified, were atypical.  Additionally, the Detective testified that "[b]ased on the probably hundreds of [abuse] cases [he has] investigated, it's not uncommon for a victim not to disclose initially."  He explained that this can be the case even when a victim has been given several opportunities to disclose and that "it's a very common thing in sexual abuse of children to not make an immediate or even a close to immediate disclosure, and it certainly is not uncommon to be given the opportunity to disclose and not disclose."

¶8    Bair was ultimately found guilty of both counts of aggravated sexual abuse of a child, a first degree felony, and sentenced to two concurrent prison terms of five years to life.  Bair moved this court for a temporary remand under rule 23B of the Utah Rules of Appellate Procedure, raising several arguments as to why his trial counsel was ineffective.  The rule 23B motion was granted in part on four specific issues:

> (1) whether [trial counsel] was ineffective for failing to call [three specific individuals as witnesses]; (2) whether [trial counsel] was ineffective for failing to call an expert witness to rebut the argument that [Bair]'s admission that he had a sex addiction established or supported the requisite intent to sexually abuse a child; (3) whether [trial counsel] was

> ineffective for failing to argue that Bair did not qualify as a 'natural parent' under the aggravated abuse of a child statute; and (4) whether [trial counsel] was ineffective for failing to argue that [Daughter]'s testimony was inadmissible because it had been hypnotically enhanced.

The trial court ruled on those four issues, concluding that trial counsel did not perform deficiently and that, in any event, any deficient performance was not prejudicial.

## ISSUES AND STANDARDS OF REVIEW

¶9      As a preliminary matter, Bair asserts that where his arguments are not preserved, we should nonetheless review his claims, applying the doctrines of plain error, ineffective assistance of counsel, and exceptional circumstances.[3]  Where applicable, we apply these doctrines to Bair's arguments and address our application of them in the standards of review outlined below for each issue presented.

¶10     Bair presents several arguments on appeal.  First, Bair argues that a new trial is warranted because portions of the separation letter were erroneously admitted into evidence and because the State's arguments surrounding the letter amounted to prosecutorial misconduct.  "We review a trial court's decision to admit evidence under rule 404(b) [of the Utah Rules of Evidence] for an abuse of discretion." *State v. Ferguson*, 2011 UT App 77, ¶ 10, 250 P.3d 89, *cert. denied*, 262 P.3d 1187 (Utah 2011).  Additionally, "[i]n determining whether a given statement constitutes prosecutorial misconduct, the

---

3. Bair also lists the doctrine of manifest injustice as an exception to preservation. Under the facts and circumstances of this case, we treat Bair's assertions of plain error and manifest injustice as one and the same because, as "in most circumstances, the term 'manifest injustice' is synonymous with the 'plain error' standard expressly provided in Utah Rule of Evidence 103(d)," *State v. Verde*, 770 P.2d 116, 121-22 (Utah 1989). *Cf. id.* at 121 (explaining that "manifest injustice" also refers to the standard "applicable to [jury] instruction[] errors through rule 19(c) of the Utah Rules of Criminal Procedure"). *See generally* Utah R. Evid. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.").

statement must be viewed in light of the totality of the evidence presented at trial." *State v. Longshaw*, 961 P.2d 925, 927 (Utah Ct. App. 1998) (internal quotation marks omitted). "[B]ecause the trial court is in the best position to determine the impact of a statement upon the proceedings, its rulings . . . will not be overturned absent an abuse of discretion." *Id.* (omission in original) (internal quotation marks omitted).

¶11 Second, Bair asserts that the portions of Daughter's testimony that were based on memories recovered after undergoing "therapeutic techniques" constitute "surprise and unfounded trial testimony" that should have been excluded from trial. Because this issue was not preserved, we consider Bair's claim for plain error and ineffective assistance of trial counsel. Bair also argues plain error in his third argument, asserting that the trial court plainly erred by admitting the Detective's testimony because his testimony constituted "unfounded expert opinion." Likewise, in his fourth argument, Bair challenges the trial court's rule 23B findings and its conclusion that trial counsel was not ineffective. Fifth, Bair requests a new trial, alleging that he was "improperly charged, bound over, and tried upon an ex post facto statute" and that, therefore, the aggravating factor of occupying a "'position of special trust' as a 'natural parent'" should not have applied to him. (Emphasis omitted.) Because this issue was not preserved, Bair asks us to view this argument through a plain error lens as well.

¶12 To prevail on a claim of plain error, the appellant, in addition to showing error, "must show that the error should have been obvious to the trial court and that the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Boyd*, 2001 UT 30, ¶ 21, 25 P.3d 985 (internal quotation marks omitted). Additionally, because the trial court ruled on this ineffectiveness argument in the rule 23B hearing, "the issues raised present mixed questions of law and fact." *State v. Snyder*, 860 P.2d 351, 354 (Utah Ct. App. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). "In ruling on an ineffective assistance claim following a Rule 23B hearing, we defer to the trial court's findings of fact, but review its legal conclusions for correctness." *State v. Bredehoft*, 966 P.2d 285, 289 (Utah Ct. App. 1998) (internal quotation marks omitted). Similarly, when an "ineffective assistance claim is first raised on direct appeal, this court can . . . determine that the defendant was denied effective assistance of counsel [only] if it can do so as a matter of law." *Snyder*, 860 P.2d at 354.

¶13 Last, Bair claims that the doctrine of cumulative error applies. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of . . . several

errors undermines our confidence . . . that a fair trial was had." *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (second omission in original) (internal quotation marks omitted). "In assessing a claim of cumulative error, we consider all the identified errors, as well as any errors we assume may have occurred." *Id.*

ANALYSIS

I. The Separation Letter

¶14    Bair raises several challenges to the admission of the separation letter. First, he argues that rule 404(b) of the Utah Rules of Evidence prohibited admission of the admitted portions of the letter. Second, he argues that the State's argument regarding the letter needed to be introduced through expert testimony and that because the State did not have an expert, the State's argument was inadmissible. Third, Bair asserts that the manner in which the State used the letter amounted to prosecutorial misconduct. We review each claim in turn.

A. Admissibility of the Separation Letter

¶15    The portions of the separation letter that were admitted state,

> I was very good for a period of time, but eventually my problems caught up with me, and I slipped back into old ways.
> I am addicted to sex itself, not to the intercourse. I rarely have had intercourse. I am addicted to the touchy/feely-play around part of sex.
> I have spoken with a psychologist at the McKay-Dee Behavioral Medicine Center. He told me that I have a clearly addictive pattern. This is an emotional disorder, and he said it was pretty much similar to what those with homosexual tendencies go through. I asked about treatment and cure. He said that the cure rate is about 50%. Not very good percentage.
> I have not indulged in any sexual activity for many months, but I have strong emotions about it. I know that I

can't do this on my own, and I'm pretty sure that I need
help.

The trial court permitted these portions of the separation letter to be admitted, determining that these excerpts "show intent, knowledge, or absence of mistake or accident pursuant to Rule 404(b) of the Utah Rules of Evidence" and also concluded "that the probative value of these statements is not substantially outweighed by the danger of unfair prejudice pursuant to Rule 403 of the Utah Rules of Evidence." Bair challenges this determination, arguing that the separation letter "amounted to inadmissible propensity evidence in disguise," that the letter was irrelevant "because [it] truly had nothing to do with [sex with] children," and that the probative value of the letter was "substantially outweighed by unfair prejudice or confusion." We disagree and determine that the trial court did not abuse its discretion in admitting the letter.

¶16    "A three-part analysis is applied to determine whether evidence is admissible under rule 404(b)." *State v. Burke*, 2011 UT App 168, ¶ 27, 256 P.3d 1102, *cert. denied,* 263 P.3d 390 (Utah 2011). The first step is to "determine whether the evidence is admissible for a proper, noncharacter purpose under rule 404(b)." *Id.* Next, the evidence must be deemed "relevant under rules 401 and 402." *Id.* Last, "the probative value of the evidence is" weighed against "the danger of unfair prejudice under rule 403." *Id.* "[W]e review a trial court's decision to admit evidence under rule 404(b) . . . under an abuse of discretion standard[, and w]e review the record to determine whether the admission of other bad acts evidence was scrupulously examined by the trial judge in the proper exercise of that discretion." *State v. Mead*, 2001 UT 58, ¶ 61, 27 P.3d 1115 (alteration and omission in original) (internal quotation marks omitted).

1.  Proper Non-Character Purpose Under Rule 404(b)

¶17    Rule 404(b) of the Utah Rules of Evidence prohibits admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). However, the rule permits admission of bad acts evidence for non-character purposes, such as proving intent. *See id.* Additionally, "[a]lthough this rule is exclusionary with respect to other crimes [or bad acts] evidence offered only to show the defendant's propensity to commit crime, it is an inclusionary rule with regard to other crimes [or bad acts] evidence which is offered for a proper, noncharacter purpose." *State v. Decorso*, 1999 UT 57, ¶ 24, 993 P.2d 837. The parties do not address, and we therefore do not decide, whether the separation

letter actually amounts to bad acts evidence; we conduct our analysis assuming, without deciding, that it does.[4]

¶18    In a hearing on a motion in limine held months before trial, the State argued that the separation letter would be used to satisfy the specific intent element of the charges. *See generally* Utah Code Ann. § 76-5-404.1(2) (2008)[5] (establishing that the intent element of sexual abuse of a child and aggravated sexual abuse of a child is the "intent to cause substantial emotional or bodily pain to any person or . . . the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant"). According to the State, the letter directly proves Bair's specific intent because Bair admits in the letter that he is addicted to the "touchy/feely" aspects of sex, and the abuse Daughter reported coincides with this admitted addiction to "touchy/feely" acts, thereby demonstrating that Bair abused Daughter to "gratify" his sex addiction.

¶19    Bair argues that the State's intent argument is "propensity evidence in disguise" and that the State is essentially arguing an "addiction-equals-molestation" theory. We disagree with this characterization of the State's argument. As the State explained, its "theory was not that Bair's addiction must have driven him to abuse [Daughter], but rather that his admitted addiction demonstrated his intent in touching [Daughter]." Additionally, even if admission of the letter prompted the jury to infer Bair acted in conformity with his addiction, rule 404(b) permits admission of prior acts evidence so long as the *sole* purpose is not to prove that a defendant acted in conformity with a character trait. *See Huddleston v. United States*, 485 U.S. 681, 687 (1988) ("Rule 404(b) . . . protects against the introduction of extrinsic act evidence when that evidence is offered *solely* to prove character." (emphasis added)); *Decorso*, 1999 UT 57, ¶ 21 ("[I]f the court determines that the evidence is being offered *only* to show the defendant's propensity to commit crime, then it is inadmissible and must be excluded at that point." (emphasis added)).

---

4. The parties both argue that the letter is bad acts evidence that needs to be analyzed under rule 404(b), as well as rules 401, 402, and 403. We apply the analysis the parties urge without deciding whether the separation letter falls under rule 404(b) and acknowledge that even if the letter does not constitute bad acts evidence, its admission would still be guided by rules 401, 402, and 403.

5. Except where substantive amendments affect our analysis, *see infra* section V, we cite the most recent version of the Utah Code.

¶20    The separation letter does provide evidence of Bair's specific intent to arouse or gratify his sexual desires, which is a proper, noncharacter purpose under rule 404(b), *see Burke*, 2011 UT App 168, ¶ 30 ("Evidence is offered for a proper, noncharacter purpose if it is offered to prove intent."); *cf. State v. Verde*, 2010 UT App 30, ¶ 18, 227 P.3d 840 (determining that even though the defendant did not put intent at issue, evidence of intent was admissible to prove the specific intent element of the crime charged), *cert. granted*, 238 P.3d 443 (Utah 2010). Therefore, the admission of the letter did not violate rule 404(b).

2.  Relevance Under Rules 401 and 402

¶21    Next, we determine whether the separation letter constitutes relevant evidence because "[e]vidence which is not relevant is not admissible," Utah R. Evid. 402. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* R. 401. Here, aggravated sexual abuse of a child and sexual abuse of a child are specific intent crimes requiring evidence that the defendant committed the crime "with the intent to arouse or gratify the sexual desire of any person." *See* Utah Code Ann. § 76-5-404.1(2). For reasons stated above, the letter tends to show Bair's intent to "arouse or gratify [his] sexual desire" and is therefore relevant.

3.  Probative Value Versus Unfair Prejudice Under Rule 403

¶22    Last, "we must determine whether [the] probative value of the evidence is substantially outweighed by the danger of unfair prejudice under rule 403 of the Utah Rules of Evidence." *State v. Burke*, 2011 UT App 168, ¶ 34, 256 P.3d 1102, *cert. denied*, 263 P.3d 390 (Utah 2011). Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Utah R. Evid. 403. The analysis under rule 403 "is not whether evidence is prejudicial, but whether it is *unfairly* prejudicial, that is, whether it has an undue tendency to suggest decision on an improper basis." *State v. Schwenke*, 2009 UT App 345, ¶ 17, 222 P.3d 768 (internal quotation marks omitted), *cert. denied*, 230 P.3d 127 (Utah 2010). Thus, "even if some level of unfair prejudice exists, [t]he mere fact that evidence possesses a tendency to suggest a decision upon an improper basis does not require exclusion; evidence may be excluded only if the danger of unfair prejudice *substantially outweighs* the probative

value of the proffered evidence." *Id.* (alteration in original) (internal quotation marks omitted). Thus, we "indulge a presumption in favor of admissibility." *State v. Dunn*, 850 P.2d 1201, 1222 (Utah 1993).

¶23    To determine whether unfair prejudice outweighs the probative value of the separation letter, we apply the factors originally described in *State v. Shickles*, 760 P.2d 291 (Utah 1988), which are commonly referred to as the *Shickles* factors. These factors are

> the strength of the evidence as to the commission of the other [bad acts], the similarities between the [acts], the interval of time that has elapsed between the [acts], the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 295-96 (internal quotation marks omitted).

¶24    "[T]he strength of the evidence as to the commission of the other [bad acts]," *see id.* at 295 (internal quotation marks omitted), is the most ambiguous of the *Shickles* factors in this case. Although the authenticity of the separation letter is undisputed, the contours of the bad act it purportedly illustrates is disputed. The State argues that the admissions in the letter of a sex addiction lend weight to its specific intent argument. However, as Bair states, the statement in the letter that he is "'addicted to sex'" is "'vague and non-descript'" and "doesn't mean much" because "[f]rom the letter alone, no one can determine if Bair was truly addicted to sex, and in what manner." Additionally, the letter does not indicate if Bair's sex addiction entailed sex acts with adult women exclusively, though Bair argues that the letter should be understood as referring only to adult women. We agree with Bair that, in general, "a vague description of an 'addiction to sex' certainly does not amount to an admission of such an uncontrollable impulse to then act out upon a child." This "addiction-equals-molestation" theory, however, is not what the State argued at trial. *See infra* ¶¶ 31-33. In closing arguments, the State recognized that the jury could not convict Bair based on the letter alone and urged the jury to consider the letter in context with the other evidence presented.

¶25    Bair does not address the next *Shickles* factor in his brief—"the similarities between the [acts]."[6] *See Shickles*, 760 P.2d at 295 (internal quotation marks omitted). Here, the evidence weighs more strongly in favor of admission of the letter. The "touchy/feely" and "play around" aspects of sex that Bair described himself as having an addiction to essentially comprise the abuse Daughter described.

¶26    The next *Shickles* factor—the length of time between the "acts"—also weighs in favor of admission. Bair placed the letter on Mother's windshield in August 1996 and the abuse occurred sometime between February 1, 1997, and December 31, 1998. The State's inference that after "many months" of repressing his sexual urges, Bair succumbed to them and abused Daughter becomes stronger in light of how close in time the writing of the letter and the abuse occurred.

¶27    Next, we must evaluate the State's need for this evidence and the "efficacy of alternative proof." *State v. Shickles*, 760 P.2d 291, 295-96 (Utah 1988). The State argues that the separation letter was necessary because evidence of specific intent would not otherwise be available. However, during the hearing on the motion in limine, the State admitted that evidence of specific intent is generally not available in cases like this. While having some evidence of specific intent is better than having none, we are not convinced that the State needed this evidence to prove Bair's specific intent. We agree with Bair that, as in most other cases where evidence of specific intent is not available, "[t]he State could have easily argued that touching a child in the manner described by [Daughter], if believed, could be for no other reason than sexual gratification." *See generally State v. Watkins*, 2011 UT App 96, ¶ 18, 250 P.3d 1019 (determining that the lack of an alternative explanation left the jury with the reasonable inference that defendant intended "to arouse or gratify his sexual desire" when he entered the child victim's bedroom and "kissed Child wetly on the side of her head for approximately three minutes and . . . pinched and rubbed her buttocks for approximately two minutes" (internal quotation marks omitted)), *cert. granted*, 250 P.3d 1187 (Utah 2011). And indeed, the inference to be drawn that the sexual abuse occurred for no other reason but

---

6. In this case, the "acts" refer to the abuse of Daughter and the admitted addiction to the "touchy/feely" and "play around" aspects of sex. Bair argues that the letter should be understood to refer to sex acts with adults, and only adults. However, on its face, the separation letter does not indicate whether Bair meant to refer to adults specifically. We do not endeavor to resolve this ambiguity; that is an issue for the fact-finder.

to "arouse or gratify" Bair's sexual desire, *see* Utah Code Ann. § 76-5-404.1(2) (2008), is arguably as strong, if not stronger than the connection the State draws from the separation letter to Bair's specific intent. Therefore, these two factors weigh against admission.

¶28     Last, we must consider the prejudicial effect of the evidence and whether it was likely to "rous[e] the jury to overmastering hostility." *Shickles*, 760 P.2d at 296. The letter indicates that Bair had, at the time of writing, suppressed his impulses to "indulge[] in . . . sexual activity for many months" and that he felt he needed professional help with the "strong emotions" he battled. These statements suggest that several months after separating from Mother, Bair was unable to control himself any longer and used Daughter to satisfy his addiction. That Bair considered walking out on his marriage a necessary step on his path to recovery indicates that the emotions he was struggling with were real and indeed strong, regardless of whether he truly suffered from a diagnosable sex addiction. Alternatively, these statements could indicate that Bair was capable of suppressing his "urge to act out sexually" for a long period of time, at least "many months," implying that he could have remained in control throughout the period of the alleged abuse. Thus, the admission of these statements from the separation letter still requires a logical leap that we are not prepared to say was an obvious or easy one to make to demonstrate Bair's specific intent to sexually abuse Daughter.

¶29     Bair also describes the State's use of the letter as a means to imply that Bair had an "overmastering sex addiction that [caused him to] molest[] his own child, . . . [which] confused the issues of the case and misdirected the attention of the jury to convict on speculation and fear." We disagree. As stated above, the letter itself did not clearly lead to the conclusion that Bair's vague assertions of a sex addiction resulted in his sexually abusing Daughter. To the contrary, and conceded at trial by the State, the letter is silent as to whether his sex addiction applies to adults, children, or both. Although the admissions of marital infidelity and an addiction to sex could affect the jury's perception, both are certainly less egregious than the child abuse of which Bair is accused. *Cf. State v. Burke*, 2011 UT App 168, ¶¶ 39-40, 256 P.3d 1102 (noting that in the context of a trial for forcible sexual abuse against an adult female, an "allegation that [on the same evening of the offense charged, the defendant also] committed a sexual offense against a four-year-old child may have an emotional impact on a jury that could suggest a decision on an improper basis," while the opposite—evidence of forcible sexual abuse of an adult female presented during a trial for aggravated sexual abuse of

a child—would not impact the jury in such a way), *cert. denied*, 263 P.3d 390 (Utah 2011). Accordingly, we doubt that the separation letter "would have caused the jury to hold an increased hostility toward" Bair, weighing in favor of admission, *see State v. Bradley*, 2002 UT App 348, ¶ 36, 57 P.3d 1139.

¶30     We have determined that four *Shickles* factors weigh in favor of admission—the strength of the bad acts evidence, the similarities, length of time, and prejudice factors—and two weigh against admission—the need and efficacy factors. We note that although the letter is not highly probative of intent, it is also not unfairly prejudicial. Therefore, because we "indulge a presumption in favor of admissibility," *see State v. Dunn*, 850 P.2d 1201, 1222 (Utah 1993), and because rule 403 requires the probative value to be "substantially outweighed" by the prejudicial effect, we determine that the *Shickles* factors weigh in favor of admission. Accordingly, the trial court did not err in admitting the letter as evidence of Bair's specific intent.

B.  Propriety of the State's Arguments Surrounding the Separation Letter

¶31     Bair argues that because the letter refers only to sex acts with adults, not children, the State needed to supply an expert witness to make the logical leap from the statements in the letter to sexual abuse of a child. Bair's argument, however, is based on his mischaracterization of the State's arguments surrounding the letter. The letter was admitted as evidence of Bair's intent; the State did not make the "addiction-equals-molestation" argument that Bair urges. Additionally, the State's use of the letter to demonstrate Bair's specific intent was not based on any sort of "specialized knowledge" within the ambit of rule 702 of the Utah Rules of Evidence. *See* Utah R. Evid. 702 (explaining the contours of expert witness testimony). Therefore, Bair's argument that the State was required to present its theories of the import of the separation letter through expert testimony is unavailing.

¶32     We also reject Bair's argument that the State committed prosecutorial misconduct in its use of the separation letter. Specifically, Bair argues that the State "clearly knew and was well aware that Bair's admissions and comments in the separation letter dealt with sexual conduct and indiscretions with adults" but nonetheless "mischaracterized the true facts[ and] inferred and argued facts to the jury which were known to be untrue." "In order to demonstrate prosecutorial misconduct, a defendant must show that the actions or remarks of . . . counsel call to the attention of the jury a matter it

would not be justified in considering in determining its verdict." *Bradley*, 2002 UT App 348, ¶ 42 (omission in original) (internal quotation marks omitted).

¶33    Here, the State did not affirmatively argue that the letter referred to an addiction to "touchy/feely" sex acts specifically with children. Rather, the State acknowledged that the letter was silent as to whether Bair's claimed addiction involved adults, children, or both. The jury is certainly justified in weighing the ambiguities and weaknesses in the evidence in reaching its verdict, and the prosecutor did not commit misconduct by pointing out those uncertainties. *Cf. id.* ¶ 44 (determining that no prosecutorial misconduct occurred where "[t]he State merely urged the jury to consider evidence already determined admissible"). Moreover, the fact that the letter was silent as to the age range of Bair's preferred sex partners also could have been construed by the jury in favor of Bair. Accordingly, Bair's prosecutorial misconduct claim fails.[7]

## II. Recovered Memories

¶34    Bair contends that the trial court plainly erred by admitting Daughter's testimony to the extent her testimony was "tainted" by hypnosis or other "scientific intervention which purportedly 'recovered memory' or 'refreshed recollection.'"[8] We disagree.

---

7. Bair also claims that the State committed prosecutorial misconduct because its "'addiction-equals-molestation' theory" was intended to "force [Bair] to incriminate himself" by pushing him to explain that the acts of marital infidelity referred to in the letter included "sexual exploits with prostitutes." Because we have rejected this characterization of the State's theory of the case, this claim of prosecutorial misconduct also fails.

8. Bair also challenges several of the trial court's rule 23B findings respecting the recovered memory issue as unsupported by the record and clearly erroneous. However, he fails to argue how these alleged errors prejudiced him. Because Bair does not adequately present this argument, we do not address it. *See State v. Thomas*, 961 P.2d 299, 304-05 (Utah 1998) (noting that "a reviewing court will not address arguments that are not adequately briefed," which includes briefs in which "the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court"). *See generally* Utah R. App. P. 24(a)(9) (explaining how to adequately present an argument in an appellate brief).

¶35  Plain error requires a showing that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Holgate,* 2000 UT 74, ¶ 13, 10 P.3d 346 (alteration in original) (internal quotation marks omitted).  The "harm" factor in the plain error analysis "is equivalent to the prejudice test applied in assessing claims of ineffective assistance of counsel." *See State v. Dean*, 2004 UT 63, ¶ 22, 95 P.3d 276.

¶36  Here, Bair argues that because "[t]he law at the time of trial was clear" regarding refreshed and recovered memories, the trial court should have prohibited Daughter's testimony to the extent her testimony was influenced by hypnosis or other such techniques.  Specifically, Bair contends that Daughter's testimony that she was not successfully hypnotized was insufficient for the trial court to continue the trial without first conducting a hearing in limine to determine whether the hypnosis-induced testimony was admissible.  Additionally, Bair's argument relies on the belief that the relaxation techniques Daughter underwent lacked the "necessary threshold reliability" to be admissible, *see Franklin v. Stevenson*, 1999 UT 61, ¶ 20, 987 P.2d 22 (emphasis omitted).

¶37  Bair's argument fails because even if he can demonstrate that the trial court erred, he cannot demonstrate that the error prejudiced him.  For the sake of argument, we will assume, without deciding, that the trial court should have stopped the trial and held a hearing in limine after Daughter indicated that she had recovered some memories while receiving therapy.  We will also assume, without deciding, that the outcome of that hearing would have required Daughter to restrict her testimony to the memories she had before she underwent any memory-recovering therapy. *See generally State v. Tuttle*, 780 P.2d 1203, 1211 (Utah 1989) ("A previously hypnotized witness may take the stand, but the witness's testimony must be limited to his or her prehypnotic recall as it has been recorded before hypnosis.").

¶38  The memories Daughter had before undergoing therapy are recorded in an interview she had at the CJC with the Detective and another investigator (collectively, the investigators) shortly after she reported the abuse.  In that interview, Daughter explained that Bair had abused her multiple times over the course of a year or less while she was between seven and eight years old and while he was living in an apartment in Layton.  Daughter told the investigators that Bair would kiss her on the lips; "stick his

tongue in" her mouth; play with her nipples; put his hands down her pants and rub her vagina, buttocks, and "all the stuff down there"; and that on one occasion Bair touched her "inside" with his finger. She told the investigators that she specifically remembered the instance of penetration because it "scared [her]" and "made [her] feel sick." She explained that each session of abuse occurred in Bair's bedroom while Sister and Son were watching TV in the other room, and that each time the abuse lasted between thirty and forty-five minutes. She told the investigators that each time, Bair would "say[] that he was loving [her] up" and tell her that she was pretty. Daughter admitted she could clearly remember only the first and last instances of abuse but that she knew the abuse occurred more than twice. She hesitated to estimate how many times the abuse occurred, but when prompted, she guessed somewhere between "five to ten, maybe fifteen" times. She was unable to remember a time of year to help identify when the abuse occurred. She described the abuse as having promptly ended one day, when in the middle of abusing her Bair "just said it was wrong[ a]nd he got up and he left." She told the investigators that Bair instructed her not to tell anybody and that he described the abuse as their "little secret." She told the investigators that she had denied being abused when Mother asked her once in the past because she "didn't want [Bair] to get in trouble." Daughter also explained that when she was in sixth grade, she disclosed the abuse to Sister and that she ultimately reported the abuse to Mother out of concern for Sister and a stepsister.

¶39 Daughter's trial testimony was largely the same, save for a few small differences: she testified that she believed the abuse occurred during the "warmer" part of the year; she described her body parts with more specificity, using the terms "vaginal area" and "clitoris" instead of "all that stuff down there"; she said that in addition to saying he was loving her up and calling her pretty, Bair would tell Daughter that she was his best friend and that Sister would be jealous of her; she testified that one time Sister and Son were outside playing volleyball, not watching TV, while the abuse occurred; she estimated the abuse to have occurred three to five times, rather than five to fifteen; she testified that after disclosing the abuse to Sister in sixth grade, Sister begged her not to tell Mother about it; and she provided additional details describing why she finally came forward, including that she was having nightmares and visiting an online forum for victims of abuse. Daughter identified two of these statements from her testimony as being the product of "recovered memories"—the claim that the abuse occurred during the warmer part of the year and that it occurred on three to five separate occasions. Thus, had the trial court restricted Daughter's testimony to pre-therapy memories, as far as the record indicates, only those two statements would have been omitted at trial.

This hardly amounts to a showing of prejudice under a plain error analysis. Indeed, even assuming that all of these discrepancies resulted from memory-recovering therapy and should have been excluded from Daughter's trial testimony, the statements Daughter made during the CJC interview, which coincide with the bulk of Daughter's trial testimony, provided sufficient evidence for the jury to convict Bair of both charges. Consequently, even assuming an error occurred, Bair nonetheless failed to demonstrate that absent the alleged error, "there [was] a reasonable likelihood of a more favorable outcome for [him]" or that "our confidence in the verdict [should be] undermined."[9] *See Holgate,* 2000 UT 74, ¶ 13.

### III. The Detective's Testimony

¶40    Next, Bair contends that the trial court committed prejudicial error by admitting the Detective's testimony. Specifically, he argues that the Detective's "testimony amounted to 'expert' testimony for which the State did not provide notice" and failed to establish sufficient foundation, and that the Detective's testimony violated rule 608 of the Utah Rules of Evidence. We address each argument in turn.

### A. Expert Testimony Argument

¶41    Bair points to several specific statements in the record to demonstrate that the Detective's testimony amounted to opinion statements "based upon his purported experience." Implicitly, Bair concludes that his utterance of opinion statements and reliance on personal experience necessarily elevated the Detective's testimony to expert testimony.

¶42    However, because Bair fails to adequately brief this issue, we decline to address it. To adequately brief an issue, appellants must include in their briefs their "contentions and reasons . . . with respect to the issues presented, . . . with citations to

---

9. For this reason, Bair's ineffective assistance of counsel claims based on trial counsel's failure to object to the admission of Daughter's testimony on memory-enhancement grounds, obtain Daughter's therapy records, or ask for a continuance, mistrial, or "other remedy" also fails due to lack of prejudice. *See generally State v. Dean*, 2004 UT 63, ¶ 22, 95 P.3d 276 (equating the plain error harmfulness test with the "prejudice test applied in assessing claims of ineffective assistance of counsel").

the authorities, statutes, and parts of the record relied on."  Utah R. App. P. 24(a)(9).
"Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of
that authority and reasoned analysis based on that authority. . . .  [T]his court is not a
depository in which the appealing party may dump the burden of argument and
research."  *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (internal quotation marks
omitted).

¶43     Here, Bair cites the Detective's opinion-like statements in the record; Utah Code
section 77-17-13, which requires parties to disclose the expert witnesses they intend to
call within thirty days of trial, *see* Utah Code Ann. § 77-17-13(1)(a) (2008); and one case,
the relevance of which is unclear, before concluding that the Detective's testimony
amounted to expert testimony and that it was not admissible as expert testimony.
"However, this is all he did."  *Cf. Thomas,* 961 P.2d at 305.  Bair failed to address rule 701
of the Utah Rules of Evidence, *see* Utah R. Evid. 701 ("If the witness is not testifying as
an expert, the witness' testimony in the form of opinions or inferences is limited to those
opinions or inferences which are (a) rationally based on the perception of the witness,
(b) helpful to a clear understanding of the witness' testimony or the determination of a
fact in issue, and (c) not based on scientific, technical, or other specialized knowledge
within the scope of Rule 702.").  He also failed to otherwise explain how or why the
Detective's testimony constituted expert testimony.  "While failure to cite to pertinent
authority may not always render an issue inadequately briefed, it does so when the
overall analysis of the issue is so lacking as to shift the burden of research and argument
to the reviewing court."  *Thomas,* 961 P.2d at 305.  Accordingly, we do not address Bair's
claim that the Detective's testimony amounted to expert testimony.

B.  Rule 608 Argument

¶44     Bair also challenges the Detective's testimony as "inadmissible opinions that
improperly vouched for [Daughter's] credibility, improperly discredited the veracity of
the defendant, and invaded the province of the jury" under rule 608 of the Utah Rules
of Evidence.  Bair directs our attention to the Detective's statements that Daughter's
"trial testimony was 'consistent' with the disclosures she made originally"; that
Daughter's delayed disclosure "'was not surprising'" because "'it's not uncommon for a
victim not to disclose initially'"; and that Bair's denials were flat, emotionless, and
atypical.

¶45     Rule 608 of the Utah Rules of Evidence states,

> The credibility of a witness may be attacked or supported by
> evidence in the form of opinion or reputation, but subject to
> these limitations:  (1) the evidence may refer only to
> character for truthfulness or untruthfulness, and (2) evidence
> of truthful character is admissible only after the character of
> the witness for truthfulness has been attacked by opinion or
> reputation evidence or otherwise.

Utah R. Evid. 608(a).  Additionally, it is the province of the jury to resolve conflicts in
the evidence and "serve[] as the exclusive judge of both the credibility of witnesses and
the weight to be given particular evidence."  *State v. Workman*, 852 P.2d 981, 984 (Utah
1993).

¶46     The Utah Supreme Court's decision in *State v. Adams*, 2000 UT 42, 5 P.3d 642, is
instructive.  In that case, the defendant argued that his former paramour invented the
allegations of sexual abuse against him and coached her adult daughter, who had
Down's Syndrome, into reporting the abuse as a means of retaliation for their breakup.
*See id.* ¶¶ 2, 6.  The supreme court determined that a psychologist could testify as an
expert witness regarding the victim's capacity to be coached into reporting a fabricated
abuse allegation, adopting the court of appeals' holding that the doctor's "testimony did
not violate rule 608(a) because it 'did not go to whether [the victim] was telling the
truth. . . .  [Rather, the doctor] merely stated it was his opinion she did not have the
cognitive ability to be coached.'"  *Id.* ¶ 12 (omission in original) (quoting *State v. Adams*,
955 P.2d 781, 783 n.1 (Utah Ct. App. 1998)).  The court reasoned that rule 608 "only bars
direct testimony regarding the truthfulness of a witness on a particular occasion" and
does not prohibit "testimony from which a jury could infer the veracity of the witness."
*Id.* ¶ 14 (internal quotation marks omitted); *see also State v. Cruz*, 2002 UT App 106U,
para. 1 (mem.) (applying *Adams* to determine that a detective's testimony describing the
victim's story as consistent, without any indication of whether the detective believed
the victim's allegations, "'did not directly address [the victim's] veracity,' and did not
'impermissibly invade the province of the jury or violate rule 608(a).'" (alteration in
original) (quoting *Adams*, 2000 UT 42, ¶ 14)).

¶47     Here, none of the Detective's testimony "directly addressed" Bair's or Daughter's
"veracity," *see Adams*, 2000 UT 42, ¶ 14.  Rather, his testimony merely offered the

observation that Daughter's trial testimony was consistent with the allegations she made during the CJC interview. Additionally, the Detective's testimony that abuse victims often delay reporting reflects a fact already recognized by Utah courts—that "[d]elayed discovery and reporting are common in [child sexual abuse] cases,"[10] *see State v. Hoyt*, 806 P.2d 204, 209 (Utah Ct. App. 1991). Simply noting that abuse victims often delay reporting did not, as Bair claims, "invade[] the province of the jury by suggesting that [Daughter] . . . is an actual victim, rather than simply a witness who has made allegations." Additionally, Bair's trial counsel's cross-examination of the Detective garnered several favorable admissions, presumably lessening the impact of the Detective's testimony regarding Bair's demeanor. Because rule 608 "only bars direct testimony regarding the truthfulness of a witness on a particular occasion," and does not prohibit "testimony from which a jury could infer the veracity of the witness," *Adams*, 2000 UT 42, ¶ 14 (internal quotation marks omitted), we do not believe the Detective's testimony violated rule 608(a) or invaded the province of the jury.[11]

## IV. Ineffective Assistance of Counsel

¶48    Bair next contends that his trial counsel was ineffective for several reasons. We address each argument in turn.

---

10. This case is not analogous to *State v. Iorg*, 801 P.2d 938 (Utah Ct. App. 1990), as Bair claims. In that case, the deputy testified that delayed reporting was common and that the victim's "delayed reporting was not an indication that she was not telling the truth." *Id.* at 939. In *Iorg* this court applied rule 403 instead of rule 608, and concluded that the deputy's testimony constituted "anecdotal statistical evidence" and was inadmissible because it was more prejudicial than probative. *See id.* at 941 (internal quotation marks omitted). Here, the Detective did not directly comment on Daughter's or Bair's veracity, or use his "anecdotal statistical" experience with delayed reporting and what constitutes a typical response from an accused to otherwise directly opine on either person's veracity.

11. Because we treat this issue as though it were preserved, we do not address Bair's claims of plain error and ineffective assistance of trial counsel. Regardless, both arguments would be defeated by our determinations that rule 608 was not violated and that the jury's province was not invaded.

¶49 As stated above, to succeed on an ineffective assistance of trial counsel claim, "a defendant must . . . demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," and "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). "Defendant not only has the burden of meeting both prongs of this test, but must also overcome 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Snyder*, 860 P.2d 351, 354 (Utah Ct. App. 1993) (quoting *Strickland*, 466 U.S. at 689). Additionally, because both deficiency and prejudice must be shown, a reviewing court can "'dispose of an ineffectiveness claim on'" either ground. *See Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993) (quoting *Strickland*, 466 U.S. at 697). Lastly, "[i]n ruling on an ineffective assistance claim following a Rule 23B hearing, we defer to the trial court's findings of fact, but review its legal conclusions for correctness." *State v. Bredehoft*, 966 P.2d 285, 289 (Utah Ct. App. 1998) (internal quotation marks omitted).

A. Failure to Call an Expert Witness To Rebut the State's Arguments Regarding the Separation Letter

¶50 Bair contends that he received ineffective assistance from his trial counsel in light of trial counsel's failure to "consult with [or] retain an expert" to rebut "the State's argument concerning the purported link between an 'addiction to sex' and the 'intent' to molest a child for sexual gratification." This issue was presented during the hearing on the rule 23B remand. At this hearing, Bair called a doctor "as a proposed expert on the lack of a connection between an addiction to sex with adults and pedophilic behavior." The doctor testified that although "he is not aware of any scientific studies showing that an addiction to sex with adults makes it more likely that a person would molest children," "situational offenders," who are by definition "not sexually attracted to children, . . . still molest them for other reasons." The doctor explained "that 52-58% of child sex abusers are not sexually attracted to children."

¶51 In its findings of fact from the rule 23B hearing, the trial court determined that trial counsel decided not to call an expert witness to testify as to this matter out of concern that it "would be 'more damaging'" because it "would have highlighted the [separation] letter to the jury by making it a focus of testimony from his expert, as well as from an anticipated rebuttal expert from the State." The trial court also noted that trial counsel feared that developing an expert's testimony on this matter "would open

the door to potentially damaging factual testimony from other witnesses about [Bair]'s sexual addiction," including testimony that Bair's addiction was not "limited [in] nature" and that he "had spent thousands of dollars on prostitutes while still married to [Mother]." The trial court concluded that "[t]he proposed expert testimony would not have rebutted the State's claim" and that trial counsel's concerns were legitimate. In other words, the trial court determined that trial counsel did not perform deficiently and, that even if he had performed deficiently, Bair suffered no prejudice from trial counsel's decision to forgo an expert witness on this matter.

¶52 We agree with the trial court. Trial counsel's strategy in not calling an expert witness was clear—to avoid opening the door to damaging factual testimony on rebuttal, especially given that the testimony the doctor presented at the rule 23B hearing was not very helpful. Indeed, the introduction of expert testimony on the separation letter may have been more damaging to Bair's case than helpful; as the trial court noted, Bair's "attraction to adults was not inconsistent with [Daughter's] allegations," especially in light of the doctor's statements that situational offenders, who by the doctor's definition are not attracted to children, nonetheless comprise "52-58% of child sex abusers." Accordingly, the trial court correctly determined that trial counsel was not ineffective for failing to call an expert witness to rebut the State's arguments regarding the separation letter. *See generally State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993) ("[I]f the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel.").

B. Failure to Call Certain Witnesses

¶53 Bair also asserts that trial counsel was ineffective for failing to call three specific witnesses (the three witnesses). Bair argues that the three witnesses would have testified that "love up" was a phrase Bair used regularly, in a non-sexual manner, and that Sister and Son "were especially needy and clingy with [Bair] when they were young (and close in time to the period of alleged abuse)," so much so that Bair "could never be alone with any one of them for any substantial period of time," thereby undermining Daughter's allegation that the abuse occurred while they were alone for thirty- to forty-five-minute periods.

¶54 During the rule 23B remand, the trial court determined that "[n]one of the[ three] witnesses knew [Bair] or [Daughter] at the time of the abuse" and that therefore "the testimony of these witnesses would have had little relevancy to the issues that were

before the jury." The trial court noted "that these witnesses would be unable to credibly comment on the meaning of 'love up' at the time the abuse occurred or whether [Bair]'s public use of this term was different from his private use of this term with [Daughter]."

¶55 We agree with the trial court. Even if the three witnesses were permitted to testify, their proposed testimonies are, at best, "speculative of how the term 'love up' was used with [Daughter]" and of how Bair's children interacted with him during the period of abuse. In other words, Bair has failed to convince us that he was prejudiced by trial counsel's decision to not call any of the three witnesses. Additionally, as the trial court stated, because trial counsel "could reasonably decide not to call these witnesses, given that none of them had any information regarding the time period in question, as well as the fact that none of their claims were actually inconsistent with [Daughter]'s allegations," Bair has failed to demonstrate that trial counsel performed deficiently. *See generally Parsons v. Barnes*, 871 P.2d 516, 522 (Utah 1994) (recognizing that both the prejudice and deficiency prongs of the ineffective assistance of counsel analysis need to be met to succeed on a claim of ineffectiveness).

C. Failure to Adequately Prepare the Case

¶56 Bair contends that trial counsel failed to adequately prepare his case for several reasons: trial counsel "met with Bair only at the courthouse on days Bair appeared for court hearings"; these meetings would last for only forty-five minutes to an hour; trial counsel did not fully discuss with Bair the case, discovery, and the evidence the State had against him; and trial counsel did not "speak with any witness listed in police reports . . . or any possible witnesses dealing with specific State theories or other lines of defenses or impeachment which [trial counsel] should have adduced from police reports." The trial court determined that trial counsel "spoke with [Bair] about the case on multiple occasions and addressed both potential witnesses and strategies," and that he did not perform deficiently.

¶57 First, we "decline to determine what amount of time counsel must spend with a defendant to ensure that the representation does not fall below an objective standard of reasonableness." *See id.* at 526. Second, Bair merely describes the additional research trial counsel could have performed and concludes that counsel's failure to do that research harmed Bair's case. This sort of speculation does not amount to actual "evidence that counsel overlooked information critical to [Bair's] defense as a result of spending too little time with him in preparation." *See id.* "[P]roof of ineffective

assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993). Therefore, "[i]n the absence of this evidence, we cannot find that the outcome of the [trial] would have been different if defense counsel had spent more time with [Bair]." *See Parsons*, 871 P.2d at 526. Accordingly, this ineffectiveness claim fails.

## D. Waiver of the Preliminary Hearing

¶58 Bair also contends that trial counsel was ineffective for waiving the preliminary hearing. Bair argues that "there was absolutely no reasonable trial strategy for full waiver of the hearing" and that he was prejudiced by the waiver. Specifically, Bair asserts that had there been a preliminary hearing, Daughter's "surprise testimony" regarding her recovered memories "would have been elicited and could have been investigated and dealt with at a more proper time pretrial"; "that most, if not all, of the objectionable trial testimony would have been elicited and could have been dealt with pretrial through proper motions in limine," including the Detective's "'expert' testimony"; and that "[t]rial counsel could have also used this as an opportunity to examine potential State or defense witnesses in order to solidify and preserve their testimony," including testimony from Sister that Bair presumes would have refuted Daughter's claim that she disclosed the abuse to Sister before she came forward to authorities.[12]

---

12. On appeal and in his motion for a rule 23B remand, Bair argues that trial counsel was ineffective for failing to call Sister as a witness. Bair contends that Sister would have likely testified that Daughter never disclosed the abuse to her. Bair bases this assumption on Sister's CJC interview, during which the investigators asked Sister if anyone "ever[] told [her] about anything" "unsafe [that has] happened to . . . anybody in [her] home," to which Sister responded, "I don't think so." Bair supported his rule 23B motion "with his own affidavit and that of [his] appellate counsel speculating on [the] testimony that could have been provided by" Sister. This court determined that Bair did not provide sufficient evidence for a rule 23B remand on that issue, and these speculations continue to be insufficient to support his ineffectiveness claim on appeal. *See Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993). Accordingly, we reject Bair's claim that trial counsel was deficient for failing to call Sister as a witness.

¶59     Bair's claims of prejudice are speculative and insufficient for us to conclude that had a preliminary hearing been held, there was a reasonable likelihood of a more favorable result at trial for him. *See generally Fernandez*, 870 P.2d at 877. Accordingly, this ineffective assistance of trial counsel argument also fails.

V. "Position of Special Trust" or "Natural Parent" Aggravating Factor[13]

¶60     Bair argues that he is entitled to a new trial because the trial court employed an ex post facto version of the Utah Code. Bair admits that this argument was not preserved but argues that the plain error exception to preservation should apply.[14] *See generally State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (identifying plain error as an exception to the preservation rule). As stated before, the plain error doctrine requires a showing that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Id.* ¶ 13 (alteration in original) (internal quotation marks omitted).

¶61     Bair explains that he was prosecuted under the 1998 version of Utah Code section 76-5-404.1(3)(h), which defines aggravated sexual abuse as including situations where the abuse is "committed by a person who occupied a position of special trust," e.g., a natural parent (the natural parent aggravator). *See* Utah Code Ann. § 76-5-404.1(3)(h) (Supp. 1998) (current version at *id.* § 76-5-404.1(3)(h) (2008)). However, as Bair points out, the 1998 version of this section was not effective until May 4, 1998, *see* Act of Mar. 14, 1998, ch. 131, 1998 Utah Laws 418, and Bair's convictions identify the abuse as having occurred sometime between February 1, 1997, and December 31, 1998.

---

13. Because of the manner in which we resolve this issue, we do not address Bair's challenge to the jury instructions regarding the aggravating factors.

14. Bair also argues that the exceptional circumstances exception to preservation applies, *see generally State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (recognizing the exceptional circumstances exception to the preservation rule), and that his trial counsel was ineffective for failing to preserve this issue, *see State v. Verde*, 770 P.2d 116, 118 (Utah 1989) (noting that an ineffective assistance of counsel claim is a means "to avoid the effect of . . . [trial] counsel's failure to preserve the [argument]"). Because of the manner in which we resolve this issue, we do not address these alternative arguments.

The version of section 76-5-404.1(3)(h) effective in 1997 and until the 1998 amendment became effective explicitly excluded "a natural parent . . . who has been living in the household" from the definition of a "person who occupie[s] a position of special trust." *Id.* (Supp. 1997). The jury was not asked to identify when the abuse specifically occurred during the twenty-two-month period alleged, and there is no evidence in the record identifying specific dates within that time frame to help determine which version of the statute should have applied to which parts of Daughter's allegations.

¶62 Therefore, we conclude that the trial court committed plain error. Application of the 1998 version of section 76-5-404.1(3)(h) alone, under the facts and circumstances of this case, was erroneous. That error should have been obvious to the trial court. And because no evidence was presented to allow the jury to pinpoint when during the alleged twenty-two-month period the abuse occurred to determine which version of section 76-5-404.1(3)(h) should have applied, we cannot be sure the jury's verdict, to the extent it was based on the natural parent aggravator, is supported by the evidence.[15] *Cf. State v. Johnson*, 821 P.2d 1150, 1158-60 (Utah 1991) (determining that because the jury returned a general verdict of guilty, the court could not discern on which aggravating factor the jury was unanimous).

¶63 The State argues that because the jury could have based its convictions of both counts of aggravated sexual abuse on the other aggravating factor charged, any error in the trial court's use of the natural parent aggravator was harmless. We disagree. While "[o]ne might argue that we should affirm the . . . verdict if there is sufficient evidence to support a finding of guilt under either of the aggravating circumstances therein presented," *id.*, "[w]e conclude . . . that such an avenue is not open to us here," *id.* at 1159. The other aggravating factor charged permitted the jury to convict Bair if it

---

15. Bair describes the plain error the trial court committed as an ex post facto application of the 1998 version of the statute. This argument assumes that the abuse occurred prior to the date the 1998 version of the statute became effective—May 4, 1998. We cannot agree; there is no evidence in the record to determine when during the charged twenty-two-month time frame the abuse occurred. As a result, we cannot determine that application of the 1998 version necessarily constituted an ex post facto type error. Rather, we determine that without any evidence pinpointing when the abuse occurred during the alleged time frame, neither version of the statute should have been applied exclusively.

determined that he "caused the penetration, however slight, of the genital or anal opening of the child by any part or parts of the human body other than the genitals or mouth" (the penetration aggravator). *See* Utah Code Ann. § 76-5-404.1(4)(j) (2008). However, because a jury verdict must be unanimous in a criminal case, *see* Utah Const. art. I, § 10, "a general verdict of guilty cannot stand if the State's case was premised on more than one factual or legal theory of the elements of the crime and any one of those theories is flawed or lacks the requisite evidentiary foundation," *Johnson*, 821 P.2d at 1159. "In such circumstances, it is impossible to determine whether the jury agreed unanimously on all of the elements of a valid and evidentially supported theory of the elements of the crime." *Id.*

¶64    Here, the jury convicted Bair of both counts of aggravated sexual abuse, but did not specify the aggravating factor upon which its conviction was based. *See id.* (determining that there was insufficient evidence to support a conviction for attempted first degree murder based on one of the two charged aggravating factors, and noting that the jury did not specify the aggravating factor upon which its verdict was based). Consequently, "we cannot determine whether the jury was unanimous on the elements of the offense based on" the penetration aggravator alone, "mak[ing] it impossible for us to affirm on th[at] alternative [aggravating factor]" regardless of whether there is sufficient evidence to do so. *See id.; see also State v. Saunders*, 1999 UT 59, ¶ 64, 992 P.2d 951 ("[T]he jury [has] to agree unanimously on which specific aggravating circumstances . . . [were] committed. . . . [A] guilty verdict [would] not [be] valid if some jurors found one aggravating circumstance and other jurors found another aggravating circumstance; it [is] not enough that they simply unanimously agree on guilt." (construing *State v. Tillman*, 750 P.2d 546 (Utah 1987))).

¶65    Nevertheless,

> [w]hen an error at trial taints a defendant's conviction, as it has here, we have "the power to enter judgment for a lesser included offense . . . if (i) the trier of fact necessarily found facts sufficient to constitute the lesser offense, and (ii) the error did not affect these findings."

*State v. Carruth*, 947 P.2d 690, 693 (Utah Ct. App. 1997) (omission in original) (quoting *State v. Dunn*, 850 P.2d 1201, 1209 (Utah 1993)), *aff'd*, 1999 UT 107, 993 P.2d 869; *see also Dunn*, 850 P.2d at 1209 (relying "on [the court's] general power to modify criminal

judgments on appeal to direct entry of judgment for" a lesser included offense). "[W]here . . . two crimes are such that the greater cannot be committed without necessarily having committed the lesser, then as a matter of law they stand in the relationship of greater and lesser offenses . . . ." *State v. Hill*, 674 P.2d 96, 97 (Utah 1983) (citation and internal quotation marks omitted).

¶66   Sexual abuse of a child is a lesser included offense of aggravated sexual abuse of a child. *See State v. McCloud*, 2005 UT App 466, ¶ 15, 126 P.3d 775. *Compare* Utah Code Ann. § 76-5-404.1(2) (2008) (defining sexual abuse of a child as when "the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant"), *with id.* § 76-5-404.1(4) (defining aggravated sexual abuse of a child as occurring when one of several enumerated conditions exists "in conjunction with the offense described in Subsection (2)"). The jury was instructed as follows:

> Before you can convict the defendant, Robert David Bair, of AGGRAVATED SEXUAL ABUSE OF A CHILD, as charged in Counts One and Two of the Information, you must find from the evidence beyond a reasonable doubt, all of the following elements of the crime.
>
> 1.  That on or about February 1, 1997 through December 31, 1998, in Davis County, Utah;
>
> 2.  The defendant, Robert David Bair;
>
> 3.  did knowingly, intentionally, or recklessly;
>
> 4.  touch the anus, buttocks, genitalia, or the breast of the female child or otherwise took indecent liberties with a child, or caused a child to take indecent liberties with the actor or another;
>
> 5.  That such acts were performed with the intent to cause substantial emotional or bodily pain to any person or with

the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant;

AND

6. a. the offense was committed by a person who occupied a position of special trust in relation to the victim; OR

    b. the accused cause[d] the penetration, however slight, of the genital or anal opening of the child . . . .

Steps one through five of the jury instruction, which were not affected by the amendment to the statute, follow the statutory definition for sexual abuse of a child, while step six, which was affected by the amendment, enumerates the two aggravating factors charged. Thus, "the jury necessarily found every fact required for [sexual abuse of a child] beyond a reasonable doubt in returning a guilty verdict under the [aggravated sexual abuse of a child] instruction it was given." *See Dunn*, 850 P.2d at 1211. Additionally, "neither [Bair] nor the State [is] unfairly prejudiced by our decision to reduce [Bair's] conviction[s] to" sexual abuse of a child.[16] *See id.* at 1212. Bair argues that the error in the application of the 1998 version of the natural parent aggravator entitles him to a new trial. However, "[a] new trial . . . is not necessary[ where e]ach element of the lesser included offense of sexual abuse of a child . . . was established at trial." *See McCloud*, 2005 UT App 466, ¶ 15. Although we affirm the trial court on all of the other issues raised on appeal, *see supra* sections I-IV, because the trial court plainly erred in applying only the 1998 version of Utah Code section 76-5-404.1(3)(h), we direct

---

16. In *State v. Dunn*, 850 P.2d 1201 (Utah 1993), the Utah Supreme Court recognized that

> "[t]his procedure does not constitute interference with the function of the trial judge or jury in a criminal trial, but rather constitutes action in accordance with the findings of the trier of fact. Moreover, this procedure does not deprive the defendant of his right to have a trial judge or jury decide on the proof of the elements of the lesser and included offense, but rather recognizes that the trier of fact has already made that decision."

*Id.* at 1212 n.8 (emphasis omitted) (quoting *State v. Byrd*, 385 So. 2d 248, 252 (La. 1980)).

the trial court to enter judgment against Bair on the lesser included offenses of sexual abuse of a child. *Cf. McCloud*, 2005 UT App 466, ¶ 15 (vacating the jury's conviction and remanding with instructions for the trial court to enter a conviction for a lesser included offense where one of the two charged aggravating factors was not supported by sufficient evidence and which aggravating factor the jury agreed upon was unclear).

## VI. Cumulative Error

¶67    Last, Bair alleges that the cumulative effect of the numerous asserted errors discussed in the preceding pages requires he be granted a new trial. "In assessing a claim of cumulative error, we consider all the identified errors, as well as any errors we assume may have occurred." *Dunn*, 850 P.2d at 1229. Here, we determined an error occurred in regard to the last issue, and our framing of the recovered memories issue assumes, without deciding, that an error occurred. Nonetheless, having identified only one error and assumed one other, we "conclude that the cumulative effect of the identified and assumed errors does not undermine our confidence in the essential fairness of the trial." *See id.; see also id.* at 1224, 1226, 1229 (rejecting the defendant's cumulative error claim despite having assumed for the sake of argument that several errors, which individually were not prejudicial, occurred at trial).

## CONCLUSION

¶68    The trial court did not err in admitting the separation letter as evidence of Bair's specific intent under rules 404(b), 401, 402, and 403 of the Utah Rules of Evidence, and the State was not required to present its theories on the import of the separation letter through expert testimony. Additionally, the State's use of the separation letter at trial did not constitute prosecutorial misconduct. Next, even assuming the trial court committed error by admitting the portions of Daughter's testimony that may have been influenced by memory-recovering therapies, Bair cannot demonstrate that he was prejudiced by these admissions. We decline to address Bair's claim that the Detective's testimony amounted to expert testimony because it was inadequately briefed, and we determine that the Detective's testimony did not violate rule 608(a) of the Utah Rules of Evidence or invade the province of the jury. The trial court correctly determined that Bair's trial counsel was not ineffective for failing to call an expert witness to rebut the State's arguments regarding the separation letter and that he was not ineffective for failing to call the three witnesses. The trial court also correctly rejected Bair's

arguments that trial counsel was ineffective for inadequately preparing his case and waiving the preliminary hearing. Bair's cumulative error argument also fails. The trial court did commit plain error when it applied only the 1998 version of Utah Code section 76-5-404.1(3)(h) regarding the natural parent aggravator, but because the jury necessarily convicted Bair of the lesser included offense of sexual abuse of a child when it found him guilty beyond a reasonable doubt of aggravated sexual abuse of a child, we remand on this issue with instructions for the trial court to resentence Bair accordingly.

_____
James Z. Davis, Judge

-----

¶69     WE CONCUR:

_____
Gregory K. Orme, Judge

_____
Michele M. Christiansen, Judge