**2013 UT App 11**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,

*Plaintiff and Appellee,*

*v.*

SCOTT KIRBY PATTERSON,

*Defendant and Appellant.*

Opinion
No. 20100243-CA
Filed January 10, 2013

Second District, Farmington Department
The Honorable Thomas L. Kay
No. 091700223

Edwin S. Wall, Attorney for Appellant
John E. Swallow and Ryan D. Tenney,
Attorneys for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which
JUDGES J. FREDERIC VOROS JR.
and MICHELE M. CHRISTIANSEN concurred.

DAVIS, Judge:

¶1 Scott Kirby Patterson appeals his convictions of two counts of aggravated sex abuse of a child and two counts of lewdness involving a child. *See generally* Utah Code Ann. § 76-5-404.1(4) (LexisNexis 2012); *id*. § 76-9-702.5.[1] We affirm.

---

1. Where recent amendments to the Utah Code do not affect our analysis, we cite the most recent version of the code for the reader's convenience.

BACKGROUND

¶2     Patterson's convictions arose out of a ten-month period beginning in February 2008, during which he abused his step-daughter (Child), while married to Child's mother (Mother).[2] Child disclosed the abuse to Mother on the first night that it happened. Mother confronted Patterson in front of Child that night, and he denied the allegations. Mother also asked Child whether she was "really sure" about her accusations and told Child, "[I]f [Patterson]'s done this . . . [we] will be fine, we'll go get us an apartment. We're going to move out. We'll be okay, you know, it doesn't matter . . . ." Child, the next morning, decided that she "didn't want to move" because she "liked where [they] were and . . . liked [Patterson]" and that she "just didn't want to change [her] life just like that," so she decided to tell Mother to "forget about it" and to "put it behind," and that "it might have been a dream," even though Child knew that "it wasn't a dream."

¶3     Shortly after Christmas that year, Mother confronted Patterson again after realizing that both Child's and Patterson's behavior had changed over the last few months and that the changes had started after Child accused Patterson of abuse in February. On December 27, 2008, Patterson admitted to Mother that he had molested Child twice. Mother immediately planned to move out of the house and filed for divorce on December 29, and in the process she called an ecclesiastical leader from her church (Bishop) to explain the situation and ask for his help. On February 9, 2009, Patterson was charged with two counts of aggravated sexual abuse of a child and two counts of lewdness involving a child.

¶4     Patterson also reached out to Bishop for help, meeting him at his office several months after Mother moved out. Patterson later

---

2.  "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict." *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 3, 82 P.3d 1064 (citation and internal quotation marks omitted).

described his meeting with Bishop as "confidential clergy-penitent communication" that involved "discussions about confession in the church." Nonetheless, after Patterson was charged, he offered Bishop's name as a character reference to the medical professional (Doctor) retained by his trial counsel to prepare a psychosexual evaluation of Patterson; the evaluation was to be used in plea negotiations and, if necessary, during sentencing. The psychosexual evaluation contains Bishop's statement to Doctor that Patterson "told [him] how sorry he was for what he has done." Because of this statement in the psychosexual evaluation, the State, during a recess in the middle of the trial and before Patterson had testified, indicated to Patterson's trial counsel that the State would use Patterson's communication with Bishop to impeach Patterson's testimony denying the abuse. Patterson decided to heed his trial counsel's advice and not testify, even though both he and his trial counsel later testified that they were prepared for him to take the stand.[3]

¶5    At trial, the defense posed the theory that Child's allegations were fabricated and used as leverage by a "very vindictive" Mother during her and Patterson's divorce. Throughout the trial, testimony was elicited from both Mother and Child that suggested Patterson was an angry person, who could be frightening at times. Mother's testimony also described some of the details of their divorce and indicated that Patterson got most of the assets because she did not "want to deal with him anymore." Defense counsel used these comments to support the theory that Child is a liar and that Mother convinced Child to fabricate the charges out of bitterness and to gain leverage in the divorce. One of the detectives (Detective)

---

3. Patterson was represented by two attorneys at trial and brings ineffectiveness claims against them both. Additionally, the trial record does not indicate one way or another whether Patterson intended to testify. In a hearing before the trial court following a remand from this court pursuant to rule 23B of the Utah Rules of Appellate Procedure, Patterson and both of his trial attorneys testified that Patterson was prepared to testify at trial and would have denied the abuse.

present during Child's interview at the Children's Justice Center (CJC) also testified at trial. Detective's testimony addressed the consistency between Child's trial testimony and her CJC interview.

¶6      Patterson was convicted of all four charges and appealed. This court granted in part and denied in part Patterson's motion to remand pursuant to rule 23B of the Utah Rules of Appellate Procedure. *See generally* Utah R. App. P. 23B(a) (permitting remand to the trial court "for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel"). Our order for remand specified,

> This matter is remanded to the district court for an evidentiary hearing for the *limited* purpose of entering findings of fact relevant to the determination of whether trial counsel's actions in advising Patterson not to testify on his own behalf, due to counsel's concern that the prosecutor would either question Patterson concerning communications he made to his bishop or would call the bishop to impeach Patterson's testimony, constituted ineffective assistance of counsel.

The trial court entered findings on this issue, and the case was returned to this court.

ISSUES AND STANDARDS OF REVIEW

¶7      We address several issues on appeal. First, Patterson argues that his attorneys were ineffective for advising him not to testify in light of the State's threat to use Bishop's statements to impeach him when the clergy-penitent privilege would have prohibited admission of Bishop's comments. "In ruling on an ineffective assistance claim following a Rule 23B hearing, we defer to the trial

court's findings of fact, but review its legal conclusions for correctness." *State v. Bredehoft*, 966 P.2d 285, 289 (Utah Ct. App. 1998) (citation and internal quotation marks omitted).

¶8      Patterson also argues that his trial attorneys were ineffective for failing to object to impermissible character evidence that came in through Child's and Mother's testimonies, and for failing to object to Detective's testimony regarding Child's character for truthfulness. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (citation and internal quotation marks omitted).

¶9      Last, Patterson asserts that the trial court committed plain error by allowing character evidence to be admitted and by permitting Detective to testify to Child's character for truthfulness. To prevail on a claim of plain error, Patterson must show that an error occurred at trial; "that the error should have been obvious to the trial court[;] and that the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Boyd*, 2001 UT 30, ¶ 21, 25 P.3d 985 (citation and internal quotation marks omitted).

ANALYSIS

I. Clergy-Penitent Privilege

¶10      Patterson argues that he "was denied effective assistance of counsel when [his trial attorneys] failed to advise him of the clergy-penitent privilege and did not assert it at trial," thereby leading Patterson to decide against testifying despite his earlier plan to testify.[4] Because this issue was addressed in the rule 23B hearing,

---

4. Patterson also argues that the prosecutor committed misconduct by threatening to use privileged communications with Bishop to

(continued...)

we defer to the trial court's factual findings. *See Bredehoft*, 966 P.2d at 289. To succeed on an ineffective assistance of trial counsel claim, "a defendant must . . . demonstrate that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment," and "that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "Defendant not only has the burden of meeting both prongs of this test, but must also

---

4. (...continued)
impeach Patterson if he decided to testify when the clergy-penitent privilege would have likely prohibited the State from doing so. Patterson suggests that the issue was preserved during the rule 23B hearing. However, rule 23B hearings are not the proper forum to preserve such claims; they provide one thing—"a procedural solution to the dilemma created by an inadequate record of trial counsel's ineffectiveness" where ineffective assistance of trial counsel is a claim on appeal. *See State v. Johnston*, 2000 UT App 290, ¶ 7, 13 P.3d 175 (per curiam); *see also* Utah R. App. P. 23B(a) ("A party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel."); *Johnston*, 2000 UT App 290, ¶ 7 ("The purpose of Rule 23B is for appellate counsel to put on evidence he or she now has, not to amass evidence that might help prove an ineffectiveness of counsel claim. It allows supplementation of the record, in limited circumstances, with nonspeculative facts *not* fully appearing in the record that would support the claimed deficient performance and the resulting prejudice."). Because this issue was not preserved, and Patterson has not demonstrated plain error, Patterson waived this argument. *See State v. King*, 2010 UT App 396, ¶ 27, 248 P.3d 984 ("[A defendant]'s failure to object to improper remarks waives his prosecutorial misconduct claim unless the remarks reach the level of plain error, meaning that an error exists [that] should have been obvious to the trial court and that the error was harmful." (second alteration in original) (citations and internal quotation marks omitted)).

overcome 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Snyder*, 860 P.2d 351, 354 (Utah Ct. App. 1993) (quoting *Strickland*, 466 U.S. at 689). "Additionally, because both deficiency and prejudice must be shown, a reviewing court can dispose of an ineffectiveness claim on either ground." *State v. Bair*, 2012 UT App 106, ¶ 49, 275 P.3d 1050 (citation and internal quotation marks omitted).

¶11     This ineffectiveness argument rests on the applicability of the clergy-penitent privilege and whether Patterson waived it by permitting Doctor to contact Bishop. The clergy-penitent privilege is established by rule 503 of the Utah Rules of Evidence,[5] which states,

> A person has a privilege to refuse to disclose, and to prevent another from disclosing, any confidential communication: (1) made to a cleric in the cleric's religious capacity; and

---

5. Patterson relies on Utah Code section 78B-1-137 as establishing the clergy-penitent privilege, as well as rule 503. *See* Utah Code Ann. § 78B-1-137(3) (LexisNexis 2012) ("A member of the clergy or priest cannot, without the consent of the person making the confession, be examined as to any confession made to either of them in their professional character in the course of discipline enjoined by the church to which they belong."). Although rule 503 was based on "the basic concept of" section 78B-1-137, it was intended to "expand[]" that concept, *see* Utah R. Evid. 503 advisory committee's note, and in accordance with that intent, rule 503 renders "ineffectual" section 78B-1-137, *see id.* R. 501 advisory committee's note. Thus, we rely on rule 503 and other applicable rules of evidence for our analysis. *See generally Debry v. Goates*, 2000 UT App 58, ¶ 24 n.2, 999 P.2d 582 ("The Utah Rules of Evidence expressly supersede statutory privileges. . . . Statutory privileges not in conflict are retained, but when inconsistencies arise, the rules control." (citations omitted)).

> (2) necessary and proper to enable the
> cleric to discharge the function of the
> cleric's office according to the usual
> course of practice or discipline.

Utah R. Evid. 503(b); *see also id.* R. 503(a) (defining "cleric" as "a minister, priest, rabbi, or other similar functionary of a religious organization or an individual reasonably believed to be so by the person consulting that individual," and defining "confidential communication" as "a communication: (A) made privately; and (B) not intended for further disclosure except to other persons in furtherance of the purpose of the communication"); *id.* R. 503(c) (including among the people who can claim the privilege "the person who made the confidential communication" and "the person who was the cleric at the time of the communication on behalf of the communicant"). The privilege protects both penitential and nonpenitential communications. *See Scott v. Hammock,* 870 P.2d 947, 950 & n.2 (Utah 1994) (interpreting the privilege as it appeared in former Utah Code section 78-24-8, which is virtually identical to the current Utah Code section 78B-1-137); *see also* Utah. R. Evid. 503 & advisory committee's note (explaining that the rule aims "to extend the privilege beyond doctrinally required confessions" and be "broadly applicable to all confidential communications with a cleric").

¶12    The parties do not dispute that Patterson's communications with Bishop are covered by the privilege. Rather, the parties dispute whether the privilege was waived. The trial court's rule 23B findings indicate that Patterson waived the privilege when he permitted Doctor to contact Bishop and when a synopsis of Bishop's comments to Doctor that included the statement, "[H]e told me how sorry he was for what he has done," was provided to the prosecution. Specifically, the trial court stated that Patterson, "as holder of the communications to clergy privilege, failed to take reasonable precautions against inadvertent disclosure of his communications with Bishop."

¶13    Waiver of a privilege occurs when the "person who holds a privilege . . . (1) voluntarily discloses or consents to the disclosure

of any significant part of the matter or communication, or (2) fails to take reasonable precautions against inadvertent disclosure." Utah R. Evid. 510(a).[6] Additionally, "it is not necessary under Rule [510] to show that a [privilege holder] intended to waive the privilege but only that she intended to make the disclosure." *Doe v. Maret*, 1999 UT 74, ¶ 19, 984 P.2d 980, *overruled on other grounds by Munson v. Chamberlain*, 2007 UT 91, 173 P.3d 848.

¶14    Here, both Patterson and Bishop held the privilege, *see* Utah R. Evid. 503(c)(1), (4), and both "fail[ed] to take reasonable precautions against inadvertent disclosure," *see id.* R. 510(a)(2). The psychosexual evaluation provided to the prosecution paraphrases Bishop as stating,

> We ha[d Patterson] and his wife teaching a primary class for 6–8 months and I was never aware of any inappropriate sexual behavior . . . no incidents. The first I found out anything was when he came and told me about this . . . . He told me he was in a lot of different leadership positions in the past . . . . I've never known him to be misleading and has always been upfront . . . he told me how sorry he was for what he has done . . . all that I know of it is isolated just to this . . . .

(Emphasis omitted) (omissions in original). The implication of Bishop's statement is that Patterson confessed to the charges. Bishop was contacted by Doctor to opine on Patterson's ability to safely be around children, and the first part of Bishop's statement

---

6. Rule 507 of the Utah Rules of Evidence governed waiver of privileges at the time of the rule 23B hearing but was subsequently renumbered as rule 510. Because this amendment to the rule was purely stylistic, we cite the most current version of the rule. *See* Utah R. Evid. 510 advisory committee's note.

to Doctor does that without implicating a confidential communication. Though Bishop may not have intended to imply that Patterson had confessed, his comments transcribed in the psychosexual evaluation indicate that Bishop "fail[ed] to take reasonable precautions against inadvertent disclosure." *See id.* Likewise, even if Doctor's communication with Bishop did not waive the privilege in and of itself, the fact that Patterson reviewed the psychosexual evaluation with Doctor and trial counsel before permitting the evaluation to be disclosed to the State essentially amounts to his "consent[ing] to the disclosure of a[] significant part of the . . . [privileged] communication," *see id.* R. 510(a)(1), with that "significant part" being the implication of his having confessed to Bishop. Accordingly, because Patterson and Bishop waived the privilege, trial counsel's performance was not deficient for failing to raise the privilege in deciding on how to advise Patterson regarding his decision to testify.

¶15 Although trial counsel could have also taken steps after the disclosure to try to preserve some confidentiality, *cf. Gold Standard, Inc. v. American Barrick Res. Corp.*, 805 P.2d 164, 172 (Utah 1990) (holding that a party's more than three-month delay in filing a motion for a protective order regarding materials that the party seemingly knowingly disclosed, but later claimed to be confidential attorney work product, "constitute[d] an independent waiver of whatever right [of confidentiality the party] may have been able to assert"), Patterson has failed to convince us that such a step had a reasonable probability of success, especially in light of Patterson's purposeful, rather than inadvertent, disclosure of the psychosexual evaluation to the State. *See Terry v. Bacon*, 2011 UT App 432, ¶ 19, 269 P.3d 188 (recognizing that principles of fairness dictate that a party "not be permitted to use the [attorney-client] privilege as a sword . . . [and] a shield"); *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

## II. Ineffective Assistance of Counsel on Issues Outside of the Rule 23B Hearing

### A. Rule 404 Evidence

¶16    Next, Patterson argues that Mother's testimony about her divorce from Patterson and Mother's and Child's testimonies about Patterson's temper amount to impermissible character evidence under rule 404 of the Utah Rules of Evidence, and that trial counsel was ineffective for failing to object to its admission. We reject this claim.

¶17    "In determining whether counsel's performance is constitutionally deficient, we presume that counsel has rendered adequate assistance." *State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993) (citing *Strickland*, 466 U.S. at 690). "Thus, if the challenged act or omission might be considered sound trial strategy, we will not find that it demonstrates inadequacy of counsel." *Id*.

¶18    Here, Patterson's theory of the case presented at the very beginning of trial suggested that Child was coerced into making false accusations by a "scorned" Mother, thereby inviting and benefitting from the admission of the now challenged evidence. Trial counsel's failure to object to evidence that supported his theory of the case was certainly a reasonable trial strategy. Accordingly, trial counsel's actions do not amount to ineffective assistance. *See id.*

### B. Detective's Testimony Regarding Child's Character for Truthfulness

¶19    Patterson also argues that Detective was not qualified to testify as to whether Child's testimony to the jury and statements to the CJC were truthful. Because this argument was not preserved, Patterson requests that we review it in an ineffective assistance of counsel framework.

¶20 As stated above, the defense theory presented at trial was that Child fabricated the charges and that Mother, motivated by her vindictiveness in the wake of her divorce from Patterson, coerced Child into doing so. The vindictiveness part of the theory was to be proved with the evidence challenged above, and the fabrication aspect was to be proved, in part, with Detective's challenged testimony. Detective's statements that Patterson now challenges involve Detective's testimony regarding Child's demeanor during the CJC interview, her description of how children typically behave during those types of interviews, and her opinion regarding the consistency between Child's CJC interview and Child's trial testimony. In answering the consistency question, Detective noted that Child's testimony was consistent, "except for some of the obvious lies that were told" during the CJC interview. Detective then elaborated on what the lie was about and noted that children often lie in such situations. Trial counsel referred to Child's lie to the CJC in opening arguments, and Detective's testimony substantiated that assertion. Counsel subsequently used Detective's statement about the lie while cross-examining Child and during closing arguments to attack Child's truthfulness.

¶21 Thus, regardless of whether such an objection would have been futile, which is likely, *cf. State v. Bair*, 2012 UT App 106, ¶¶ 46–47, 275 P.3d 1050 (upholding as in accordance with the Utah Rules of Evidence a detective's testimony regarding his observation that the victim's CJC and trial testimonies were consistent, and rejecting challenges to the permissibility of the detective's testimony regarding the frequency of delayed reporting in child sex abuse cases because that fact is "already recognized by Utah courts"), Detective's testimony is largely consistent with trial counsel's stated defense theory. Accordingly, we cannot say that counsel's failure to object amounted to ineffective assistance.

### III. Plain Error

¶22 Patterson also raises a plain error argument against the trial court's admission of Mother's and Child's testimonies regarding Patterson's character, and Detective's testimony about Child's

character. Plain error, like ineffective assistance, provides an exception to the preservation rule that otherwise requires appellants to raise arguments for the first time during the proceedings below. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. The preservation requirement "serves two important policies." *Id.*

> First, in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it. Second, a defendant should not be permitted to forego making an objection with the strategy of enhanc[ing] the defendant's chances of acquittal and then, if that strategy fails, . . . claim[ing] on appeal that the Court should reverse.

*Id.* (alterations and omission in original) (citations and internal quotation marks omitted). "The plain error exception [to the preservation rule] enables the appellate court to balance the need for procedural regularity with the demands of fairness." *Id.* ¶ 13. However, conducting a plain error review where trial counsel's failure to object was a strategic decision, "would be sanctioning a procedure that fosters invited error." *State v. Bullock*, 791 P.2d 155, 159 (Utah 1989); *see also State v. Beck*, 2007 UT 60, ¶¶ 16, 18, 165 P.3d 1225 (explaining that the trial court's role is "to protect the accused's right to a fair trial," and not to "usurp the function of counsel"); *State v. King*, 2006 UT 3, ¶ 14, 131 P.3d 202 (noting that it is the party's prerogative, not the trial court's, to present the theory of the case and "to zealously advocate their cause," and citing this distinction as what "distinguishes our adversar[ial] system of justice from the inquisitorial one" (citation and internal quotation marks omitted)). Thus, if trial counsel's decision not to object "was conscious and did not amount to ineffective assistance of counsel, this Court should refuse to consider the merits of the trial court's ruling. Indeed, the failure to object in such instances

should be treated as a conscious waiver and should preclude further consideration of the issue." *Bullock,* 791 P.2d at 159. In other words, "if trial counsel's actions amounted to an active, as opposed to a passive, waiver of an objection, we may decline to consider the claim of plain error." *Id.*

¶23    As discussed in the preceding section, that is precisely what occurred here. Accordingly, we decline to address these issues in a plain error framework. *See id.* at 158–59.

CONCLUSION

¶24    Trial counsel was not ineffective for failing to assert the clergy-penitent privilege because Patterson waived that privilege when he approved the disclosure of the psychosexual report to the State. Trial counsel was also not ineffective for failing to object to the rule 404 evidence and for failing to object to Detective's testimony regarding Child's description of events because both supported trial counsel's stated theory of the case. We do not consider Patterson's plain error challenges to the admission of the rule 404 evidence and Detective's statements about Child's description of events because that evidence corresponded with trial counsel's stated theory of the case.[7]

_____

7. Patterson also raises a cumulative error argument. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of . . . several errors undermines our confidence . . . that a fair trial was had." *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (second omission in original) (citation and internal quotation marks omitted). Because we have rejected each of Patterson's claims of error, we also reject his cumulative error argument.