**2019 UT App 11**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ANDRE GUSTAVO HENRY LOPEZ,
Appellant.

Opinion
No. 20150052-CA
Filed January 10, 2019

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 131403285

Douglas J. Thompson and Margaret P. Lindsay,
Attorneys for Appellant

Sean D. Reyes and John J. Nielsen,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Defendant Andre Gustavo Henry Lopez appeals his convictions for rape, object rape, and assault. Defendant argues that he received constitutionally ineffective assistance of counsel and that the cumulative effect of counsel's errors deprived him of a fair trial. We reject each of Defendant's arguments and affirm.

## BACKGROUND[1]

¶2 Defendant and his girlfriend (Girlfriend) lived together. One evening, they attended a wedding reception where they both consumed alcohol. Defendant observed Girlfriend speaking to other men and became agitated. After leaving with Girlfriend, he yelled at her "the whole car drive home," using a variety of sexual and racial invectives and challenging Girlfriend's sexual self-restraint.

¶3 Upon arriving at their house, Defendant's tirade continued, prompting a neighbor (Neighbor) to call the police because of the yelling and screaming. A police officer responded to the house soon after and spoke only to Girlfriend. Girlfriend said everything was fine and told the officer to leave because his presence was "going to make this worse."

¶4 After the officer left, Defendant resumed insulting Girlfriend and insisted that she have sex with him because she needed to "take care of his needs." Defendant tried to kiss Girlfriend, but she "told him no" and pushed him away with her hand. This further upset Defendant, so he threatened he was "gonna take it" if she refused to have sex with him. Girlfriend curled up in the fetal position on the couch and Defendant put his hand on her neck and shoved her down. Then he put his fingers in her vagina and her anus. Girlfriend told Defendant he was hurting her and told him to stop.

¶5 Defendant then yanked Girlfriend's sweatpants hard enough to pull her off the couch, ripping the pants in the process. Girlfriend pleaded with him to go to bed and "just be

---

1. Following a criminal conviction by a jury, we recite the facts in the light most favorable to the jury's verdict. *State v. Pham*, 2015 UT App 233, ¶ 2, 359 P.3d 1284.

done." Defendant responded by dragging Girlfriend by her ankle to the front door, demanding that she leave if she would not have sex with him. Girlfriend made her way back to the couch. At this point, Girlfriend succumbed to Defendant's threats and agreed to go upstairs to the bedroom with him. On the way upstairs, Defendant smacked Girlfriend's legs, hit her head, and pulled her hair.

¶6 Once upstairs, Defendant removed his pants and demanded oral sex, again disparaging Girlfriend. Girlfriend said, "Please no," and she asked him to "just go to bed." According to Girlfriend, "that's when he took it." Though Girlfriend tried to keep her legs closed and told Defendant he was hurting her, Defendant raped Girlfriend twice.

¶7 The next morning, Defendant apologized, telling Girlfriend that he "didn't know [he] did that to [her]" and that he was "so sorry." Defendant explained that he "blacked out" and did not remember anything that happened. Two days after the incident, Defendant sent a text message to Girlfriend stating he "really fucked up [their] life," and wondered "[w]hat charges" she would be "pressing on [him]." Girlfriend reported the incident to the police later that morning and underwent a sexual assault medical examination that same day.

¶8 The physician identified extensive bruising on Girlfriend's arms, legs, neck, back, and lower abdomen. The physician could not pinpoint the age of the bruises, but opined that they "seemed very similar" and were consistent with Girlfriend's account. The physician also found vaginal injury, consistent with Girlfriend's account of the rape, but acknowledged that the injury was also consistent with consensual sex.

¶9 Meanwhile, Defendant, apparently in a panic, spoke to Neighbor—the one who initially called the police—explaining

what had happened. Defendant "sounded stressed out" and "was pacing back and forth" while he spoke. Defendant explained that he ripped Girlfriend's pants off and forced her to kiss him. He also said he was nervous that Girlfriend would accuse him of attempted rape because he forced her to kiss him during sex, and because she had recovered her pants from the garbage. After hearing Defendant's account, Neighbor said, "[T]hat's not makeup sex. That's not attempted rape in my mind. That is rape, you know." Neighbor's girlfriend arrived during the conversation, and Defendant told her the same story.

¶10 The State charged Defendant with rape, two counts of object rape, and assault. Defendant testified at trial, corroborating some of Girlfriend's account of the incident. He acknowledged that he was upset and jealous because Girlfriend spoke to other men at the wedding reception. He also confirmed that he called Girlfriend names, tried to kiss her and was rebuffed, tried to kick her out of the house, and pulled her off the couch by yanking her pants.

¶11 Diverging from Girlfriend's account, Defendant testified that Girlfriend joined him upstairs after a brief separation following their argument and altercation. There they "talked for a minute about what happened." Then they kissed, Defendant explained, and he and Girlfriend had consensual sex twice.

¶12 The jury acquitted Defendant of one of the object rape counts, but it convicted him of one count each of rape, object rape, and assault. Defendant appeals his convictions.

¶13 Defendant asserts on appeal, among other things, that his trial counsel was constitutionally ineffective for failing to investigate a car accident that Girlfriend allegedly "was involved in on the day she reported the offenses in this case." He further contends that trial counsel was ineffective for failing to "consult with a medical expert regarding the medical evidence related to

[Girlfriend's] injuries." Following initial briefing and oral argument in this court, we remanded to the district court pursuant to rule 23B of the Utah Rules of Appellate Procedure in order to develop evidence in the record. *See State v. Heywood*, 2015 UT App 191, ¶ 39, 357 P.3d 565 (explaining that "[t]he purpose of a rule 23B remand is to develop new evidence in the record, without which a defendant cannot bring his ineffective assistance of counsel claim on appeal" (quotation simplified)). Following three evidentiary hearings, the district court issued findings on this new evidence.

*Defense Theory of the Case and the Car Accident*

¶14 Defendant admitted to neighbors, police, and his attorneys that he engaged in a physical altercation with Girlfriend on the date of the incident, resulting in injury to both of them.[2] Because Defendant also acknowledged that he and Girlfriend had engaged in sexual intercourse on the night of the altercation, trial counsel chose to focus on the defense theory that, although Defendant injured Girlfriend, the sex was consensual.

¶15 Defendant explained to defense counsel prior to trial that he and Girlfriend had sex on the night of the incident, about an hour and a half to two hours after the physical altercation. Defense counsel then prepared a defense theory that, although

---

2. We diverge here from an otherwise largely chronological description of the facts. We do so because the facts that follow were not necessarily considered by the jury, whose verdict helps inform our recitation of the facts. *See supra* note 1. We instead recite the facts here as found by the district court following evidentiary hearings held on temporary remand pursuant to rule 23B of the Utah Rules of Appellate Procedure. *See State v. Patterson*, 2013 UT App 11, ¶ 10, 294 P.3d 662.

Defendant and Girlfriend engaged in a physical fight, the sex that followed was consensual. This incident, counsel would contend, mirrored a pattern in the couple's relationship—physical altercations followed by "make-up sex." Defendant testified at trial, however, that only about fifteen minutes separated the physical altercation downstairs and the sex in the bedroom. Upon hearing his client on the witness stand state that only fifteen minutes separated the altercation and sex—rather than an hour and a half to two hours—defense counsel believed "the whole defense theory fell apart." Specifically, counsel thought the jury would not believe that consensual "make-up sex" occurred so soon after a violent, physical attack.

¶16    Of additional concern to defense counsel in defending his client, shortly before trial Defendant "completely contradicted" his account of the incident. In contrast to the story he told counsel initially, Defendant later told counsel that he did not get into a physical altercation with Girlfriend and did not cause any of her injuries. Instead, he asserted that all of Girlfriend's injuries "resulted exclusively from her car accident." Although counsel already knew about a car accident involving Girlfriend, this particular revelation occurred after expiration of the pretrial deadline to identify witnesses. Frustrated, defense counsel declined to alter the defense strategy planned for trial and did not investigate the car accident further. Nevertheless, at trial, defense counsel asked Girlfriend about the accident in an effort to establish that some of the injuries documented in her medical examination could have resulted from the collision. In response, Girlfriend testified that the accident occurred ten days *after* her sexual assault examination.

¶17    Defendant then told defense counsel that insurance claim documentation would contradict Girlfriend's statement about the date of the accident. Before the close of trial, defense counsel received the insurance claim documentation, which appeared to corroborate Defendant's claim regarding the actual date of

Girlfriend's accident. From these records, counsel deduced that the accident occurred on the morning of—and prior to—Girlfriend's examination by the physician and not ten days later as she had testified.

¶18   Counsel recalled Girlfriend as a witness and once again asked about the date of the accident, allowing her to first refresh her memory by reviewing the insurance claim documentation. For the second time, Girlfriend asserted that the accident occurred ten days after she was examined by the physician. But defense counsel could not impeach her testimony with extrinsic evidence because he could not lay sufficient foundation for the admission of the insurance claim documentation. Consequently, defense counsel abandoned this line of questioning.

¶19   Girlfriend's testimony remained consistent at the post-trial evidentiary hearings, where she again testified that the accident occurred ten days after her report of the rape and physical examination. The district court, having considered "all the evidence, as well as the demeanor and credibility of the witnesses" regarding the date of the accident, determined that the accident occurred on the later date—ten days after Girlfriend's medical examination. Addressing contrary evidence, the court determined that Girlfriend "misreported the accident . . . as having occurred" on the date of the rape report and medical examination.

*Medical Expert*

¶20   Through discovery, Defense counsel received and reviewed the medical examiner's sexual assault examination report and used it to prepare for trial. But he did not review any other medical evidence or pursue records from the medical clinic where the examination was performed. Counsel also did not discuss with Defendant the benefits and drawbacks of retaining a defense medical expert for trial. Defense counsel briefly

consulted with a nurse practitioner about the report, but he did not ask the nurse practitioner to review the report or analyze any photographs.

¶21 Based on the consultation and defense counsel's experience, counsel entered a stipulation with the prosecution that the State's medical expert would testify that Girlfriend's reported injuries were consistent with consensual sex.

ISSUES AND STANDARDS OF REVIEW

¶22 Defendant raises four claims on appeal. With regard to the first three claims, Defendant contends that he received constitutionally ineffective assistance of counsel for trial counsel's failure to (1) object to jury instructions, (2) investigate Girlfriend's car accident, and (3) retain a medical expert. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified). Defendant also contends that the cumulative effect of his counsel's ineffective performance preparing for and at trial, if not prejudicial individually, cumulatively denied him a fair trial. "We will reverse a jury verdict or sentence only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (quotation simplified).

ANALYSIS

I. Ineffective Assistance of Counsel

¶23 To establish ineffective assistance of counsel, Defendant "must show: (1) that counsel's performance was objectively

deficient, and (2) a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first element, Defendant "must overcome the strong presumption that his trial counsel rendered adequate assistance by persuading the court that there was no conceivable tactical basis for counsel's actions." *Clark*, 2004 UT 25, ¶ 6 (quotation simplified). With regard to the second element, Defendant "must demonstrate that any deficiencies in counsel's performance were prejudicial to the defense." *State v. Lantz*, 2018 UT App 70, ¶ 7, 424 P.3d 1094 (quotation simplified). "A defendant's inability to establish either element defeats a claim for ineffective assistance of counsel." *State v. Reid*, 2018 UT App 146, ¶ 19, 427 P.3d 1261.

A.     Failure to Object to Jury Instructions

¶24    Defendant first argues that counsel performed deficiently by failing to object to two jury instructions describing the elements for rape and object rape. Specifically, he contends that trial counsel should have objected because the instructions "impl[y] there is no mens rea component of the consent element." We first consider the rape jury instruction then review the object rape instruction.

¶25    Rape is defined as having "sexual intercourse with another person without the victim's consent." Utah Code Ann. § 76-5-402(1) (LexisNexis Supp. 2018).[3] Regarding the applicable mental state, "a person is not guilty of an offense unless the person's conduct is prohibited by law; and . . . the person acts

---

3. Because the language of the statute has not changed, we cite the most recent version for convenience.

intentionally, knowingly, [or] recklessly." *Id.* § 76-2-101(1) (LexisNexis 2012).

¶26 In *State v. Barela*, 2015 UT 22, 349 P.3d 676, our supreme court determined that a jury instruction on rape was in error and that "reasonable trial counsel should have objected to it." *Id.* ¶¶ 26–27. The challenged instruction there "identified four elements of rape: 1. The defendant . . . , 2. Intentionally or knowingly; 3. Had sexual intercourse with [the victim]; 4. That said act of intercourse was without the consent of [the victim]." *Id.* ¶ 25 (internal quotation marks omitted). The supreme court concluded that "the instruction implied that the mens rea requirement ('intentionally or knowingly') applied *only* to the act of sexual intercourse, and not to [the victim's] nonconsent." *Id.* ¶ 26. The same cannot be said of the instruction provided here.

¶27 To convict Defendant of rape, the instruction here required the jury to find:

> 1. That the defendant . . . ;
>
> . . .
>
> 4. Did intentionally, knowingly, or recklessly:
>
> 5. Have sexual intercourse with another
>
> 6. Without that person's consent; . . .

This instruction applies the mens rea element (intentionally, knowingly, or recklessly) to both the act of sexual intercourse and the lack of consent. Although appearing separately on a numerical list, the "intentionally, knowingly, or recklessly" mens rea element is followed by a colon and modifies elements five (sexual intercourse) and six (lack of consent). Consequently, this instruction does not suffer from the same infirmity as the *Barela*

instruction. Thus, counsel's failure to object to this instruction did not constitute deficient performance. And because counsel did not perform deficiently, we do not analyze whether the failure to object was prejudicial. *See State v. Reid*, 2018 UT App 146, ¶ 19, 427 P.3d 1261.

¶28   Unlike the rape instruction, however, the object rape instruction does not contain a mental state requirement for nonconsent. A person commits object rape when, "without the victim's consent, [the person] causes the penetration, however slight, of the genital or anal opening of another person . . . by any foreign object, substance, instrument, or device, including a part of the human body other than the mouth or genitals." Utah Code Ann. § 76-5-402.2(1). A person is not guilty of this offense unless that person acts intentionally, knowingly, or recklessly with respect to each element. *Id.* § 76-2-101(1) (LexisNexis 2012). Additionally, object rape requires that the person act "with intent to cause substantial emotional or bodily pain to the victim or with the intent to arouse or gratify the sexual desire of any person." *Id.* § 76-5-402.2(1) (Supp. 2018).

¶29   Here, to convict Defendant of object rape the instruction required the jury to find:

> 1. That the defendant . . . ;
>
> . . .
>
> 4. Did cause the penetration, however slight, of the genital or anal opening of another person . . . ;
>
> 5. By any foreign object, substance, instrument, or device, including a part of the human body other than the mouth or genitals;

6. Without consent of the victim;

7. With the intent to:

> a. Arouse or gratify the sexual desire of any person; OR
>
> b. Cause substantial emotional or physical pain to the victim; . . .

¶30    This instruction explains the necessary specific intent, but does not provide the general mens rea for object rape and fails to apply that required mental state to the element of nonconsent. "[O]ur criminal code requires proof of mens rea for each element of a non-strict liability crime," including the element of nonconsent. *See Barela*, 2015 UT 22, ¶ 26. Like the jury instruction in *Barela*, the object rape instruction here "was in error" and "reasonable trial counsel should have objected to it." *Id.* ¶ 27. We can formulate no reasonable trial strategy that might include the lack of an objection to this object rape instruction. Holding the State to its burden to prove beyond a reasonable doubt Defendant's general mental state can only benefit Defendant. *See id.*

¶31    However, to establish ineffective assistance of counsel, Defendant must also demonstrate prejudice resulting from counsel's error. In other words, Defendant must show "a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996) (quotation simplified). Defendant has not made such a showing here.

¶32    "The essence of consent is that it is given out of free will, and determining whether someone has truly consented requires close attention to a wide range of contextual elements, including verbal and nonverbal cues." *State v. Reigelsperger*, 2017 UT App

101, ¶ 81, 400 P.3d 1127 (quotation simplified). Here, the jury heard Girlfriend's account of Defendant pulling her off the couch and ripping her pants in the process. Girlfriend testified that Defendant put his fingers in her vagina and anus; she told him to stop and that he was hurting her. Defendant next tried to eject Girlfriend from the house. The record reveals no evidentiary basis on which a jury could find that Girlfriend consented to the digital penetration. More particularly, the evidence presented would not reasonably support the jury concluding that Defendant did not act at least recklessly with regard to Girlfriend's lack of consent.

¶33 At trial, Defendant never claimed that these acts were done with Girlfriend's consent or based on the mistaken belief that she had consented. Instead, Defendant's testimony at trial simply implied that no object rape occurred. He testified that he grabbed Girlfriend's pants and yanked with "a lot of force," pulling her off the couch and ripping her pants. He explained, "[Girlfriend] jumped up and grabbed [Defendant] by the back of [his] head," but he "[didn't] know if she was trying to pull [him] down or fight." He then tried to pull Girlfriend out of the house, and afterward he went upstairs to the bedroom.

¶34 The jury ultimately convicted Defendant of object rape.[4] The record reflects no testimony or evidence that would suggest that Defendant believed Girlfriend had consented to Defendant putting his fingers in her vagina and anus. Rather, the record is replete with Girlfriend's statements: "[S]top," "You're hurting me," "Please don't do that anymore," and "Just go to bed." These explicit statements are in addition to other cues of

---

4. The jury acquitted Defendant of one of the two object rape counts. The record does not reveal the jury's rationale, but it appears as though the jury may not have fully credited Girlfriend's testimony.

nonconsent. Girlfriend lay in the fetal position on the couch with Defendant's hand on her neck pushing her down. Moreover, Defendant himself acknowledged he tried to force Girlfriend out of the house by dragging her to the door, and he disparaged her throughout the evening. Further supporting the absence of any consent on Girlfriend's part, Defendant apologized via text messages after the rape and object rape. He said he was "so sorry" for what he had done though suggesting that he had "blacked out." Perhaps anticipating consequences for his actions, Defendant also asked Girlfriend what criminal charges she would be pursuing against him.

¶35 We conclude that overwhelming evidence was introduced at trial showing Girlfriend did not consent to the digital penetration. As a result, there is no reasonable probability that— had the jury been properly instructed as to the applicable general mens rea—it would have found that Defendant did not act intentionally, knowingly, or recklessly as to Girlfriend's consent. *See id.* ¶ 79. Accordingly, Defendant has not established trial counsel's ineffectiveness for failing to object to the jury instructions.

B.     Failure to Investigate the Car Accident

¶36 Defendant next asserts that he received ineffective assistance of counsel as a result of trial counsel's failure to investigate Girlfriend's car accident. Defendant argues he could have presented evidence at trial showing the accident occurred shortly before the medical examination. This evidence, he contends, suggests an alternative source of her bumps, bruises, and lacerations. Because we conclude that Defendant has not established prejudice with respect to trial counsel's failure to investigate the car accident, Defendant cannot establish ineffective assistance of counsel. *See State v. Lantz*, 2018 UT App 70, ¶ 7, 424 P.3d 1094 (explaining that ineffective assistance of counsel requires a defendant to

"demonstrate that any deficiencies in counsel's performance were prejudicial to the defense" (quotation simplified)).

¶37  To establish prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Here, Defendant must show a reasonable probability that, had the jury heard conflicting testimony as to the date of the car accident, the outcome would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

¶38  At trial, the jury heard limited evidence about the car accident. Girlfriend testified that she was involved in a collision ten days after she reported the rape and received a medical examination. Based on this testimony, the photos of Girlfriend's injuries documented during that exam were taken before the accident and therefore could not have shown any accident-related injuries. Defendant contends that he should have been able to present conflicting evidence as to the date of the accident to prove that it occurred on the morning before the report and medical examination. Defendant argues that involvement in an automobile accident would suggest that at least some of Girlfriend's injuries were the result of the collision. Defendant contends that evidence of the date of the accident would establish "the argument and assault were not as serious as the extent of [Girlfriend's] injuries showed, and that [Defendant's] account of make-up sex was more reasonable." We are not persuaded that there is a reasonable probability that presenting this evidence to the jury would have made a difference.

¶39   Defendant presented a theory that the charged incidents were nothing more than a common pattern in the relationship. He and Girlfriend would argue and fight, Girlfriend would leave or move out for some period of time, and the two would eventually reconcile and engage in "make-up sex." Defendant explained this pattern, and Girlfriend acknowledged this happened at least on one other occasion. Consistent with this theory, Defendant testified that he and Girlfriend fought and grappled at the house following the wedding reception. At one point, he "forcibly just grabbed [Girlfriend] as hard as [he] could . . . by her [sweatpants] and her legs and . . . was trying to pull her off the couch to pull her out of the house." Asked whether he pulled Girlfriend with enough force to cause injury, Defendant said, "Yes[.]" Defendant then described Girlfriend grabbing the back of his head and ears, trying to pull him down or fight with him. At that point, he "bust her hands off" him as he "[tried] to get her hands under control."

¶40   Had the jury heard conflicting testimony as to the date of the car accident, it reasonably would have reached the same conclusion regarding Defendant's convictions. Even if the car accident provided an alternative explanation for some of Girlfriend's bumps and bruises, there remained no dispute that Defendant and Girlfriend engaged in a physical altercation. During that altercation, Defendant yanked Girlfriend's sweatpants, causing her to fall to the floor. And he admitted that he dragged her across the floor in an attempt to eject her from the house. Moreover, by Defendant's account, Girlfriend grabbed the back of his head and ears leading to his vigorous effort to break free and gain control of her hands. All of these undisputed exchanges may have caused Girlfriend's bumps, bruises, and lacerations. Indeed, Defendant and Girlfriend each testified that they were injured in the fight. Defendant therefore concedes that evidence of the disputed accident dates would provide only an "alternative explanation for *at least some* of

[Girlfriend's] injuries." (Emphasis added.) We are unpersuaded that the jury reasonably would have concluded that because Defendant caused only some—but not all—of Girlfriend's injuries, she consented to sexual intercourse approximately fifteen minutes later.

¶41    Defendant also argues that he should have been allowed to impeach Girlfriend's credibility by presenting evidence disputing the date of the accident. To this end, he asserts that defense counsel was ineffective for failing to develop the impeachment evidence prior to and during trial. On the record developed by the district court on temporary remand, it would appear Girlfriend either misrepresented the date of the collision on the witness stand at trial or she misrepresented the date to the insurance company. With this information at trial, Defendant certainly could have suggested that Girlfriend lacked credibility generally. As a result, he suggests, Girlfriend's testimony regarding lack of consent to sex could have been rendered less believable. Though conceivable, we are not persuaded Defendant has established a reasonable probability of a different result "sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694.

¶42    Here, the jury considered substantial evidence from both Girlfriend and Defendant confirming the following: an extended argument; name-calling; a violent physical altercation causing injuries; Defendant attempting to force Girlfriend to kiss him, and Girlfriend rebuffing that advance; Defendant attempting to eject Girlfriend from the home; and sexual intercourse following a fifteen-minute intermission. The day after the incident, Defendant sent text messages to Girlfriend explaining he "didn't know [he] did that to [her]" and that he was "so sorry." He further stated he "really fucked up [their] life," and asked "[w]hat charges" she would be "pressing on [him]." None of this evidence was substantially disputed at trial.

¶43    The jury also heard testimony from Defendant's neighbor. Neighbor explained that, two days after the incident, Defendant told him "he thought he was [in] trouble, that [Girlfriend] was going to try to accuse him of attempted rape." Defendant described details of the incident to Neighbor, including the fighting and name-calling, Defendant holding Girlfriend down to kiss her, as well as the subsequent "make-up sex." Defendant, appearing anxious and scared, told Neighbor that Girlfriend took the ripped pants out of the garbage. And Defendant declared that he was in "big trouble," indeed in "deep shit."

¶44    With regard to the disputed evidence, Girlfriend testified that Defendant had sex with her—"that [she] didn't want"—while she tried to keep her legs closed, told him to stop and told him that it hurt. Defendant testified, however, that the sex was consensual. It is certainly conceivable the jury could have disbelieved Girlfriend's account as to consent because she misstated the date of her car accident to an insurance carrier. But given the bulk of other evidence supporting Girlfriend's version of events and discrediting Defendant's account, the jury was also provided with ample evidence supporting Defendant's conviction, making a different outcome at trial highly unlikely. Consequently, our confidence in the jury's verdict is not undermined by trial counsel's failure to impeach Girlfriend's credibility with the insurance report.

C.    Failure to Retain a Medical Expert

¶45    Defendant next argues that his trial counsel should have presented testimony of a medical expert at trial to contradict the State's medical expert. He asserts that such testimony would have benefitted his defense in two ways. First, a medical expert testifying for the defense could have rebutted the State's medical expert testimony by opining that Girlfriend's injuries were not as severe as alleged by the State. Second, an expert could have

opined that some of Girlfriend's injuries may have resulted from a car accident.

¶46 In preparation for trial, Defendant's trial counsel reviewed the sexual assault examination report provided by the State in discovery, but counsel did not consult with a medical expert on the report or review other available medical examination evidence. Ultimately, counsel elected not to retain a medical expert for trial, opting instead for a stipulation with the State limiting the scope of the State's expert's testimony.[5] While preparing to cross-examine the State's expert, counsel informally consulted with a nurse practitioner who had experience as a sexual assault nurse examiner. Counsel asked questions of the nurse but he did not provide the examination report or any photos for the nurse's review. At trial, the State's expert testified that Girlfriend's genital injuries were consistent with sexual intercourse, whether consensual or nonconsensual.

¶47 During evidentiary hearings held on temporary remand, the district court heard testimony from a different medical expert retained by Defendant for the purpose of determining whether trial counsel performed deficiently. This medical expert testified consistently with the State's expert to a great extent, but contradicted some of the State's expert's trial testimony. We do not recount the specific findings here, because we conclude that trial counsel was not objectively deficient for electing to limit the scope of the State's expert testimony rather than retain his own medical expert for trial.

¶48 Although disputing some details, Defendant acknowledged at trial that he and Girlfriend physically fought

---

5. The record does not reflect the details of the stipulation, except that the State's expert would concede that Girlfriend's genital injuries were consistent with consensual sexual intercourse.

on the night of the wedding reception and that their altercation injured each of them. Defendant further conceded that he and Girlfriend twice engaged in sexual intercourse that night. Much of the physical evidence, then, was subsumed in the defense theory that this was simply part of their relationship pattern—a fight, a break, then "make-up sex."

¶49   Under these circumstances, an independent medical expert would have been redundant, confirming Girlfriend's injury results already described by the State's expert. This testimony would also highlight, again, the presence of many of the bumps, bruises, and abrasions that Defendant did not dispute he may have caused. Additionally, through stipulation, defense counsel secured a limit to the scope and impact of the State's expert. *See supra* ¶ 46. Because the decision not to retain a medical expert "might be considered sound trial strategy," Defendant has not demonstrated that his counsel's performance was objectively deficient. *See State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993).

## II. Cumulative Error

¶50   Finally, Defendant asserts that the cumulative effect of the alleged errors undermines confidence in the jury's verdict. Considering all alleged errors and any we assume may have occurred, we "reverse only if the cumulative effect of the several errors undermines our confidence" that Defendant has received a fair trial. *State v. King*, 2010 UT App 396, ¶ 17, 248 P.3d 984 (quotation simplified). To reverse a verdict because of cumulative error, we must determine that "(1) an error occurred, (2) the error, standing alone, has a conceivable potential for harm, and (3) the cumulative effect of all the potentially harmful errors undermines [our] confidence in the outcome." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 42, 428 P.3d 1038. "But if the claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm, the doctrine

will not be applied." *State v. Maestas*, 2012 UT 46, ¶ 363, 299 P.3d 892 (quotation simplified).

¶51    Here, Defendant has established that counsel erred by failing to object to the object rape jury instruction, which omitted the required general mental state. Because we have identified only one error, there are no others to accumulate. Consequently, the cumulative error doctrine does not apply. *State v. Beverly*, 2018 UT 60, ¶¶ 80–81 (stating that the cumulative error doctrine has no application when only one error is demonstrated or assumed on appeal); *see also Conocophillips Co. v. Utah Dep't of Transp.*, 2017 UT App 68, ¶ 31, 397 P.3d 772 (same).

CONCLUSION

¶52    We conclude that Defendant has not established that he received ineffective assistance of counsel. Trial counsel did not render deficient performance by not objecting to the rape jury instruction and by not retaining an independent medical expert. Defendant has failed to establish that he was prejudiced by counsel's failure to object to the object rape jury instruction and failure to investigate Girlfriend's car accident. We also conclude that the cumulative error doctrine does not apply. Accordingly, we affirm.

––––––––––